18961

Lanneau SHELLEY, Respondent, v. Mrs. Gertie SHELLEY, as Executrix of M. B. Shelley, Estaleen S. Ganis, Evelyn S. Perritt (Perry), Bevan Shelley and Eugene Shelley, Appellants.

(169 S. E. (2d) 764)

*Messrs. Stevens & Holt,* of Loris, *for Appellants,* ▮▮

*J. Reuben Long, Esq.,* of Conway, *for Respondent,* ▮▮

September 22, 1969.

*Per Curiam*:

On a prior appeal, *Shelley v. Shelley,* 244 S. C. 598, 137 S. E. (2d) 851 (1964), this cause was remanded for determination of the factual issue of precisely where the testator, M. B. Shelley, intended the dividing line to be between the parcels of land devised, in remainder, to his

sons, Lanneau Shelley and Bevan Shelley. By agreement between the parties, the matter was referred to the Master of Horry County, whose recommendations and findings were favorable to Bevan Shelley, but, upon exceptions to the master's report, the circuit court decreed a line as contended for by Lanneau Shelley. Bevan Shelley appeals from such decree, which will be reported herewith.*

The appeal does not challenge any of the rulings of the circuit judge as to the admissibility or inadmissibility of evidence. The sole question stated and argued challenges the circuit judge's factual determination of just where the testator, M. B. Shelley, intended the dividing line to be. Although not raised or argued, a question has now arisen among members of the court as to whether we were correct in holding as we did, on the former appeal, that the will contained an equivocation which might be properly explained by admissible parol testimony, including declaration of intention on the part of the testator. If there was error in this respect, and the will was an incomplete one, as opposed to one containing an equivocation, which might be properly explained by parol testimony, it would seem to follow that upon remand the remaining issue for determination would have been one which only a court of equity could resolve. While there is not now unanimity of opinion among the members of the court thereabout, a majority is of the view that there was no error in the prior opinion and that the sole issue for determination upon remand was a legal issue.

Consequently, on this appeal our jurisdiction is limited to the correction of errors of law and we are bound by the findings of fact of the circuit judge unless they are without support in the evidence or manifestly controlled by error of law. It is, of course, our duty to review the record and determine whether there are facts supporting the findings of the lower court. See the various

* See Appendix.

cases collected in West's South Carolina Digest, Appeal and Error, Key Nos. 1008 and 1010(1).

■ We have carefully reviewed the entire record in this case and are convinced that the division of the property as adjudged by the circuit court conforms to the will of the testator and is amply supported by the evidence. It is not shown that his finding in this respect was influenced or controlled by any error of law.

The judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.

## APPENDIX

### ORDER OF JUDGE BAKER

This case on appeal to the Supreme Court reported in 244 S. C. 598, 137 S. E. (2d) 851, was remanded "so that the Court below may upon consideration of all competent, admissible evidence determine the factual issue of precisely where the testator intended the dividing line to be, such factual issue, of course, to be determined in the light of our foregoing construction of the will."

The Court concluded "that the testator intended a dividing line running in a generally easterly-westerly direction lying south of the buildings devised to Lanneau Shelley." The Court also ruled that "while declarations of intention on the part of a testator are ordinarily excluded from consideration, they are, nevertheless, according to the great weight of authority, receivable to assist in interpreting an equivocation, or latent ambiguity."

The case was referred back to the Master after being remanded, additional testimony received, and the Master has filed his report recommending that the tract of land be divided in accordance with Defendants' Exhibit "B", "beginning at the C. O. Grainger estate land at point A run-

ning thence south 49 degrees 30 minutes 1580 feet, more or less."

The plaintiff has filed appropriate exceptions to the Master's Report. After study of the record, it is my conclusion that the dividing line as recommended by the Master should be rejected and the line should be located as drawn on a plat made by J. F. Thomas, R. L. S., dated April 29, 1965, further identified as Plaintiff's Exhibit No. 1.

This location is in conformity with the tetsimony of W. D. Jenerette, Esq., the scribener of the will, and Mrs. Gertie Shelley, which is the admissible affirmative evidence which tends to explain the testator's intentions as to where the dividing line between the northern and southern parts is to be. The plaintiff's testimony and that of his wife, Mrs. Lanneau Shelley, as to the declarations of the testator, are inadmissible by virtue of Section 26-402 and have not been considered. Mrs. Shelley's dower right gives her a present interest which could be affected by the event of the trial.

The Master based his recommendation primarily upon two factors, "a dividing line running in a generally easterly-westerly direction," as written in the opinion of the Supreme Court, and an acreage ratio related to a fifty acre tract, which is a small part of Mrs. Gertie Shelley's evidence.

The Supreme Court has not stated that the line must be a continuous line running generally in an easterly-westerly direction. The word "generally," as I construe it, is used in the sense that the line is not restrained or limited to a specific direction in its entirety, but it is sufficient if the line or segments of the line are primarily or principally connected with an easterly-westerly course. The line as adjudged in this decree has an easterly-westerly direction of 177 feet, thence in a northerly direction for 275 feet and then the line proceeds in a westerly direction for a distance of 1321 feet. The minor deviation of 275 feet in a northerly-southerly direction does not change the general course of direction from east to west or west to east.

Mrs. Gertie Shelley at one point in her testimony stated, as quoted by the Master, that "The deed calls for 50 acres, and he (the testator) told me more than once that the deed calls for 50 acres and Lanneau was to have 30 acres and Bevan 20. It's about a two horse and a half farm." Mrs. Shelley did not limit her testimony to any acreage allotment. Mrs. Shelley was referring to an approximate two-thirds and one-third division rather than a specific number of acres. The following quoted testimony is illustrative:

"Q. Who did you all decide was going to get this farm?

"A. Lanneau about two-thirds of it. Lanneau was to have 30 acres of it if they was 50 and Bevan was to have 20.

\* \* \* \* \* \* \* \*

"Q. He never did put anything in writing. Isn't there 68.6 acres in this farm?

"A. I don't know. The deed calls for fifty.

"Q. He wanted Lanneau to have thirty acres?

"A. Two-thirds of it.

"Q. I thought you said he wanted him to have thirty acres?

"A. Well, ain't thirty two-thirds of fifty? If it wasn't but fifty he wanted him ot have two-thirds.

"Q. What if there was 68.6 acres, what did he say?

"A. He wanted him to have the most."

On the issue of the precise location of the line Mrs. Shelley testified as follows:

"Q. The dividing line started at the C. O. Grainger line and run a straight line to the pine tree?

"A. Yes.

"Q. And was the pine tree sitting in the place where the canal is now?

"A. Yes.

"Q. How close to where it curves?

"A. I couldn't tell.

"Q. When you get to where the line curves where does it go?

"A. To the wire fence.

"Q. Then where?

"A. South to Highway 917.

"Q. Now, Mrs. Shelley, do you recall when the canal was dug?

"A. In the fall of 1955.

"Q. Was that canal put on the line you and your husband agreed on?

"A. Yes, right on the line we figured to have it dug.

\* \* \* \* \* \* \* \*

"Q. All right. Do you know where he intended the dividing line to be for Bevan and Lanneau?

"A. Yes.

"Q. Will you explain where that was?

"A. It was at the canal.

"Q. Where did it begin at? Whose land?

"A. The C. O. Grainger line, come down the canal straight until it got to that wire fence, then it turned at the wire fence and went straight out to the road."

Mr. Jenerette stated, in his testimony, in response to a question concerning the dividing line as quoted:

"When we came to the matter of a dividing line between Bevan Shelley and Lanneau Shelley, there wasn't a dividing line at that time. Mr. Shelley was to go back and establish a line by a ditch or a canal, but the main part of the land was to be divided by a ditch."

The foregoing excerpts of evidence are not in competition with the words of the document, but they expand and make more specific the words used in the will. The line recommended by the Master has as its derivation a mathematical and engineering genesis rather than the intent of the testator. The line as established herein divides the tract in an approximate two-third and one-third basis. Lanneau Shelley will receive 46.3 acres, and Bevan Shelley will have 22.3 acres. Each receives the designated buildings as outlined in the will. As far as it can be determined the intent of the testator is fulfilled.

It is, therefore, ordered, adjudged and decreed that the dividing line is established as follows: beginning at the juncture of the canal at the C. O. Grainger line, running thence a course of south 66 degrees 35 minutes east a distance of 1019 feet to a stake, thence in a straight line from the stake or crook of the canal a distance of 302 feet, to a fence, then south 22 degrees 45 minutes west to Highway 917, a distance of 275 feet, thence north 88 degrees 30 minutes east for a distance of 177 feet. These courses and distances are fully shown on a plat by J. F. Thomas, R. L. S., dated April 29, 1965, and further identified as Plaintiff's Exhibit No. 1. Tract "A," as shown on the plat, is the section or portion in which Lanneau Shelley has the remainder interest, and Bevan Shelley has the remainder interest in Tract "B".