## STATE v. FOOTE.

1. EVIDENCE—EXPERT EVIDENCE.—A PHYSICIAN may testify as an expert upon information obtained by personal observation and examination of a patient.

2. HOMICIDE.—CHARGE as to the responsibility of one for human death, which he was the means of bringing about or hastening, held not objectionable.

3. NEW TRIAL.—It is not error to refuse to set aside a verdict because the jury disregarded the expert testimony in the case.

Before GARY, J., Abbeville, September term, 1899. Affirmed.

Indictment against Thomas Foote for murder. From verdict of manslaughter and sentence, defendant appeals.

*Messrs. Frank B. Gary* and *Graydon & Graydon,* for appellant. The former cites: *As to expert evidence:* 20 S. C., 452; 38 S. C., 188.

*Mr. Thos. S. Moorman,* for Solicitor Ansel, contra.

July 16, 1900. The opinion of the Court was delivered by

MR. JUSTICE JONES. The appellant, under an indictment for the murder of James Walker, was convicted of manslaughter, and now seeks to reverse the judgment imposed, upon exceptions to the admission of certain testimony, to the charge to the jury, and to the refusal of the motion for a new trial.

The first three exceptions relate to the admission of the testimony of Dr. B. M. Carlton, who gave his opinion as a medical expert as to the cause of the deceased's death. It appears that in an altercation between the parties, on Sunday, May 29, 1898, the defendant shot Walker, wounding him in the fleshy part of the thigh, and that Walker died on the Friday following. There was an issue whether the wound inflicted caused the death. The witness testified that he was a practicing physician, that he attended Walker on the

day he was shot and extracted the ball, that he saw the patient the next day, and again on Friday, June 3, 1898, when he was in a dying condition.    Then the following questions and answers were made, upon which the exceptions were taken: "What caused his death?    He died from peritonitis. Peritonitis caused his death?    Yes, sir; I presume he died from peritonitis caused from this wound.    Mr. Graydon objects.    What is your medical opinion as to what caused that peritonitis?    Well—.    Mr. Graydon objects.    By the Court: Peritonitis cannot be caused by drinking water, can it?    Witness: No, sir; and in this case I don't know as a fact what caused it, but I presume that it was that wound." The specific objection made in the exceptions to this testimony is that the witness failed to state any fact upon which he based his opinion, but in the argument before this Court the position is taken that the witness should have stated facts, or if he desired to express an opinion, it should have been upon a hypothetical state of facts.    We think the testimony was competent.    In 12 Ency. Law, 444, the general rule is correctly stated thus: "Physicians may give their opinions of the cause of death, such opinions being based upon knowledge derived as attending physician, or from examination, or from hypothetical statement."    It is a very common practice to allow a medical expert to state his opinion as to the cause of death based upon his own personal observation. While it is quite proper that the jury, so far as practicable, should be informed as to the facts or circumstances upon which the opinion is based, it is not error to permit such expert opinion, when it appears to be based upon the witness' personal observation.    If the objecting party desires, he may on cross-examination develop all the circumstances inducing the opinion which are capable of reproduction to the jury, and thus test the value of the opinion.    An hypothetical statement of facts as the basis for the opinion of a medical expert as to the cause of death is not necessary when the opinion is based upon the personal observation or examination by the witness.

The fourth exception assigns error in charging the jury as follows: "It matters not whether the death is attributable to the gunshot, but if it hastened his death, but for a minute, he would be responsible for the death." The specific error complained of is not pointed out in this exception, and it was not argued. It was not disputed that the wound was given by the defendant, and there is no doubt that one is responsible if by his unlawful agency he hastens the death of another.

The fifth exception imputes error as follows: "In charging the jury as follows: 'If a party is shot, and while getting well pneumonia sets in and caused his death, the gunshot wound would be the primary cause, probably, of his death, and he would be liable;' the said charge being erroneous and misleading, and having a tendency to prejudice the jury against the defendant and to injure his case, for the following reasons: 1. Because it is contrary to the rule of law that the State must prove in such a case beyond a reasonable doubt that the sickness which caused the death was brought about by the wound. 2. Because the reasonable presumption in the case stated by his Honor would be directly contrary to what he stated to the jury it would be, namely, that the wound in such a case did not produce the pneumonia which was the immediate cause of the death. 3. Because his Honor in making said statement too clearly intimated to the jury his opinion that the wound inflicted in this case caused the peritonitis from which the deceased died." That portion of the charge containing the sentence complained of is as follows: "Now, if your inquiry leads you to the belief that the death of the deceased was produced by some other cause than by the gunshot wound, he could not be convicted. But I charge you that if he died from some disease brought on by that gunshot wound, he should be liable for it. It matters not whether death is attributable to the gunshot, but if it hastened his death, but for a minute, he would be responsible for the death. If a party is shot, and while getting well pneumonia sets in and caused his death, the gunshot

wound would be the primary cause, probably, of his death, and he would be held liable.   If a man receives a wound by which death is produced, the party inflicting it is liable for the consequences, although the deceased might have recovered by the exercise of more care and prudence, or with better treatment." While the sentence excepted to, when isolated from its connection, is objectionable, yet when taken in connection with the whole charge, we cannot think there was prejudicial error. ᐧ The jury was clearly instructed that if the death of the deceased was produced by a cause independent of the gunshot wound, the defendant could not be convicted, but that he was liable if the death was from a disease brought on by the wound.   The exception is overruled.

The sixth exception imputes error as follows: "VI. In charging the jury as follows: 'Now, you will say what caused the man's death, not so much that, but did the defendant here cause it, or did he die from blood poison or pyaemia or pneumonia? If so, then under what circumstances was the wound inflicted? Was it in self-defense, or was it under such circumstances as made the defendant believe that it was necessary for him to resort to his gun in order to save his own life or to save him from serious bodily harm?' the said charge being misleading and prejudicial to the defendant in the following particulars: 1. In having no relevancy to the facts of the case, there being no testimony that the deceased died from blood poison or pyaemia or pneumonia.   2. Because it withdrew from the consideration of the jury every defense set up by the defendant except that of self-defense.   3. Because it in effect told the jury that if they believed that the deceased died from any of the diseases mentioned by his Honor, the defendant caused his death.   4. Because the said charge is in violation of the Constitution of this State, in that his Honor thereby intimated his opinion that the defendant was guilty, and charged on the facts." This charge was relevant to the facts. There was testimony in behalf of the State tending to show that the deceased died from a disease brought on by the

wound inflicted by the defendant. The Court was careful to impress upon the jury the duty of ascertaining whether the defendant had any agency in the death of the deceased—in other words, whether death resulted from the wound inflicted by defendant, or from some independent cause, and this issue was not withdrawn from but was fairly submitted to the jury. Nor do we see any ground for the complaint that the Circuit Judge charged upon the facts.

The remaining exceptions relate to the refusal of the motion for a new trial. When there is absolutely no testimony tending to sustain the verdict, it is the duty of the Court to grant a new trial, and it is error of law in such a case to refuse; but where there is some testimony to sustain the verdict, the refusal of a new trial by the Circuit Court on the testimony is final. In this case, we find no such absolute want of testimony as to make it error of law to refuse a new trial. It is contended, however, that the Circuit Judge committed error of law in basing his refusal upon an improper and untenable ground, inasmuch as he stated as his reason therefor, "that if the doctor had stated that the death was not caused by the wound, the jury had the right to disregard the testimony and find that the wound caused the death of the deceased." This does not constitute error of law. A Circuit Judge is not bound to set aside a verdict, even if the jury in reaching its conclusion may disregard the opinion of an expert. *Jones* v. *Fitzpatrick,* 47 S. C., 58.

The judgment of the Circuit Court is affirmed.