14592

HENRY v. ALEXANDER *ET AL.*

(194 S. E., 649)

January, 1937.

*Messrs. R. E. Babb, R. T. Wilson, W. E. Dillard* and *Blythe & Bonham,* for appellants.

*Mr. R. W. Wade,* for respondent,

December 29, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought by the plaintiff, as conservator of the Commercial Bank of Clinton, against the defendants, to enforce the collection of the stockholders' statutory liability. We presume that the action was brought for the

benefit of the depositors of this institution, although it is not so stated in the complaint.

On behalf of the defendants, demurrers were interposed, upon the grounds that the complaint failed to state facts sufficient to constitute a cause of action, in that, (a) It appears on the face of the complaint that the bank was not adjudged insolvent until August 17, 1936, and that the complaint contains no other allegation of insolvency; (b) the allegation of insolvency therein alleged was of a time after the repeal of the provisions of Article 9, § 18, of the Constitution, and Section 7868 of the Code of 1932, imposing liability for assessment on stockholders in insolvent banks.

The demurrers were overruled by the Circuit Judge, and the defendants have appealed.

On February 14, 1935, 39 St. at Large, p. 35, the General Assembly ratified an amendment to Section 18 of Article 9 of the State Constitution, relating to the liability of stockholders in banks to depositors, which eliminated from the Constitution the following provision: "Provided, That stockholders in banks or banking institutions shall be liable to depositors therein in a sum equal in amount to their stock over and above the face value of the same."

Following the ratification of the above amendment to the Constitution, the General Assembly, on February 21, 1935, 39 St. at Large, p. 46, repealed Section 7868, 1932 Code, concerning the liability of stockholders in insolvent banks, but in Section 2 of the Act provided, "That this repeal shall not apply to or affect stockholders' liability in banks or banking institutions coming within the terms of the aforementioned section, which have heretofore been adjudged insolvent."

The appeal attacks the sufficiency of the allegations of the complaint with reference to the bank's insolvency, and hence the query as to the right of the conservator to enforce the statutory liability.

It appears from the allegations of the complaint that the bank was placed in liquidation on April 11, 1934, by orders of the State Board of Bank Control, and that the plaintiff, as conservator, acting under the authority of the Board of Bank Control, and the laws of the State, is liquidating said bank; that by resolution adopted July 22, 1936, the Board of Bank Control directed the plaintiff, as conservator, to levy the stockholders' assessment of 100 per cent. against all stockholders of the bank, and that pursuant to this direction the plaintiff, as conservator, upon his petition to the Circuit Court, obtained an order authorizing and empowering him to levy and enforce the collection of the assessment by a suit.

A portion of the order of the lower Court, which is dated August 17, 1936, is incorporated in the complaint, and it is therein adjudged, among other things, "That the said Commercial Bank of Clinton, S. C., be, and is hereby declared insolvent."

The complaint prays judgment against each of the defendants for the amount alleged to be due on their stockholders' liability.

The appellants contend that, if the bank was not insolvent until August 17, 1936 (the date of the Circuit Court order), that being the only allegation of insolvency in the complaint, then no cause of action is stated, because at that time there was no law in this State, either constitutional or statutory, imposing double liability on stockholders of banks for an assessment. The complaint is likewise challenged upon the ground that there is no allegation therein that the bank was "adjudged insolvent" prior to February 14, 1935, or prior to February 21, 1935, the dates respectively of the constitutional and statutory repeal.

It was held in the order overruling the demurrers that the complaint is broad enough in its scope, and that its allegations are sufficient to show that the bank became insolvent prior to 1935, before the adoption of the amendment to the Constitution and the repeal of the statutory

provisions imposing the superadded liability on stock-holders. Support for this holding is obviously referred to the allegations of the complaint that the bank was placed in liquidation on April 11, 1934, by orders of the State Board of Bank Control, and that the plaintiff, as conservator, is liquidating the affairs of the bank pursuant to and under the instructions contained in these orders.

In our opinion, these allegations cannot be considered as making an averment of insolvency; nor does the complaint, viewed in the most liberal light, supply the needed state-ment of fact. Even solvent banks may be liquidated, and it may be that banks which are considered insolvent may prove to be solvent when liquidated.

The term "liquidation," applied to a partnership or a corporation, is the act or operation of winding up the af-fairs of such firm or company by collecting the assets, set-tling with its debtors and creditors, and appropriating the amount of profit or loss. 37 C. J., 1265. And this definition embodies the general understanding. A business in process of liquidation, whether it be that of an individual, a part-nership, or a banking corporation, may or may not be in-solvent. The term does not necessarily carry with it the con-notation of insolvency, nor, specifically, that the assets of a bank in process of liquidation are insufficient to pay its debts.

It was held in *Ex parte Berger,* 81 S. C., 244, 62 S. E., 249, 252, 22 L. R. A. (N. S.), 445, that "a bank is insolvent when, from the uncertainty of be-ing able to realize on its assets, in a reasonable time, a suf-ficient amount to meet its liabilities, it becomes necessary for the control of its affairs to pass out of its hands."

Allegations in conformity with this rule are not found in the complaint.

The pleadings in actions to enforce the superadded liability of stockholders in a bank must conform to the rules of pleading applicable to other civil actions. The complaint should set forth all of the facts essential to

the enforcement of liability against the person sued. It is requisite to the successful maintenance of such an action that the bank should be insolvent and unable to pay its depositors in full; that the bank be indebted to the person or persons for whose benefit the action is brought; and that the person against whom the suit is brought is one who is liable under the statute or the constitutional provision creating the liability.

The respondent argues, however, that the allegation in the complaint, that the bank was placed in liquidation on April 11, 1934, by orders of the State Board of Bank Control, is equivalent to an allegation of insolvency prior to February 14, 1935, and prior to February 21, 1935, because neither the State Board of Bank Control nor the Governor, under then existing banking laws, had the power to order liquidation except where there was a concurrence of certain factors and conditions, to wit: Insolvency, or imminent danger of insolvency; overhead expenses, amounting to more than net income; and for the protection of creditors and depositors. But the respondent overlooks the fact that only one of these causes for liquidation would necessitate or justify the imposition of an assessment on stockholders, and that one is insolvency. Under the law as it existed prior to the repeal, there could be no recourse on stockholders of a bank to pay the superadded statutory liability, unless such bank was insolvent. Therefore, it logically follows that, in an action against stockholders to enforce the collection of this double liability, it is necessary now, not only that the complaint contain the allegation that the bank is insolvent, but that such insolvency existed prior to the time the law creating the liability was abolished, otherwise no cause of action is stated.

Was it necessary for the plaintiff to allege in his complaint that the Commercial Bank of Clinton had been "adjudged insolvent" prior to the repealing Act approved February 21, 1935, and prior to the con-

stitutional amendment? We do not think so. These words are found in Section 2 of the Act, which we have already quoted. No reference whatever is made to any such procedure or condition in the amendment to Article 9, § 18, of the Constitution. Nor do we find any provision in that section of the Constitution or in Section 7868 placing any restriction or limitation upon the rights of depositors to enforce the collection of the stockholders' liability in case of insolvency.

Practically all Courts which have had occasion to pass upon the liability of stockholders in banks regard this liability as being contractual, rather than penal, in nature. 7 Am. Jur., Banks, p. 81, § 98. This has been the rule uniformly followed in our State. It was held in *Fischer et al. v. Chisholm et al.,* 159 S. C., 395, 157 S. E., 139, 140, and reaffirmed in *Rutledge v. Stackley et al.,* 162 S. C., 170, 160 S. E., 429, 78 A. L. R., 427, where the Court had under consideration the constitutional provision, Section 18, Art. 9, relating to the double liability of stockholders in banks, that "the liability is contractual in its nature, arising by reason of the purchase of the stock, the subscription being a voluntary act of the purchaser, who makes it in contemplation of all applicable law and understanding that he may be called upon for such contribution." Also, see, *Howarth v. Lombard,* 175 Mass., 570, 56 N. E., 888, 49 L. R. A., 301; *Broderick v. McGuire,* 119 Conn., 83, 174 A., 314, 94 A. L. R., 890.

Such a contractual right ought to be enforcible. Inasmuch as the nature of it and the methods of enforcing it depend upon the constitutional and statutory provisions creating it, and which entered into the implied contract at the time the stock was purchased, we must look to these provisions as they existed prior to the repeal, to ascertain the extent of the liability and the manner of enforcing it.

In *Hawthorne v. Calef,* 2 Wall., 10, 17 L. Ed., 776, the liability was decided to be contractual, in the sense that un-

der the Constitution no subsequent statute could impair the obligation.

To now hold that the liability of stockholders in an insolvent bank cannot be enforced unless the bank had been "adjudged insolvent," by judicial determination, prior to the repeal of the constitutional and statutory provisions, would not only impair, but might, in many cases, nullify the liability of stockholders to depositors which existed prior to such repeal.

To so hold would be to run counter to all cognate legislation enacted by the General Assembly during the banking exigencies of 1932, 1933, and 1934.

It is argued by the respondent that what the General Assembly intended to say was that the repeal of the liability provision would apply only to those banks which the State Board of Bank Control had not put in liquidation. In other words, that the Legislature intended to use the phrase, "heretofore been placed in liquidation," instead of the phrase, "heretofore been adjudged insolvent." Be that as it may, if the words are given their literal meaning, then Section 2 of the Act approved February 21, 1935, is obnoxious to and violative of that provision of the Constitution which prohibits the passage of legislation impairing the obligation of contracts, and for that reason cannot be upheld. Article 1, § 8, Constitution 1895, and Article 1, § 10, of the Federal Constitution.

In *Martin et al. v. Saye et al.,* 147 S. C., 433, 145 S. E., 186, 191, the Court quoted the following with approval from *Green v. Biddle,* 8 Wheat., 1, at page 84, 5 L. Ed., 547: "The objection to a law, on the ground of its impairing the obligation of a contract, can never depend upon the extent of the change which the law effects in it. Any deviation from its terms, by postponing or accelerating the performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, however minute

26 

or apparently immaterial in their effect upon the contract of the parties, impairs its obligations." ·

For a full discussion of this subject see *Louisiana ex rel. Ranger v. New Orleans,* 102 U. S., 203, at pages 206, 207, 26 L. Ed., 132.

The respondent is appealing from an order of the █ Circuit Judge disallowing his proposed amendments to the case on appeal. By these amendments the respondent proposes to include in the transcript of record the *ex parte* proceeding upon which the Court adjudicated the bank to be insolvent. It is contended that this proceeding is a proper part of the record on this appeal. We do not think that it is. The only issue presented by this appeal is that made by the complaint and by the demurrers thereto. On this phase of the case the order of the Circuit Judge disallowing the amendments must be upheld, but we reverse the order of the lower Court in holding that the allegations of the complaint are legally sufficient.

It is ordered that the plaintiff, if he be so advised, may amend his complaint within 20 days after the remittitur is sent down; and, if the plaintiff amends the complaint, the defendants are allowed 20 days after the service of the amended complaint within which to answer or plead.

Judgment reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness. 