16465

STATE v. DOE

(63 S. E. (2d) 303)

*Mr. John E. Stansfield,* of Aiken, *for Appellant,*

*Mr. Berte D. Carter, Solicitor,* of Bamberg, *for Respondent.*

February 9, 1951.

TAYLOR, Justice.

The appellant, under an indictment for murder of one Chan Pontoon, was convicted of manslaughter at the October, 1949, Term of Court of General Sessions for Aiken County and was sentenced to serve six years in the State Penitentiary. He now appeals to this Court upon exceptions which pose the question of whether or not the Trial Judge committed error in refusing appellant's motion for a directed verdict of not guilty and/or refusing his motion for a new trial.

The testimony discloses that appellant shot the deceased, Chan Pontoon, with a twenty-two caliber rifle on or about the 19th day of February, 1949, the ball entering the fleshy part of the right thigh continuing through this leg and entering the right side of the left leg, being removed from the muscles of this leg. There is a great variance in the testimony as to the facts of the case; however, this is of no consequence in the appeal before us as appellant's position is bottomed upon his contention that the testimony for the State fails to establish that the wound inflicted by the appellant was the cause of death. On the other hand, it is contended that an intervening cause, to wit, improper manipulation of the area around the wound by the doctor, caused to be released into the blood stream a blood clot or embolism which, rather than the gunshot wound, was the cause of death. The wound which deceased received at the hands of appellant on the 19th day of February, 1949, cut or punc-

tured a large blood vessel in the right leg causing considerable loss of blood before he was carried to the hospital where he remained until the 10th day of March when he was dismissed with instructions to return for periodic treatments.

Dr. J. R. Howell testified that he treated the injured man's wounds three or four times, the first time at his office, but found that he lost considerable blood in the process and instructed him thereafter to report to the emergency room at the hospital for his treatments.

A portion of Dr. Howell's testimony appears as follows:

"Q. What finally happened to the man? A. He came into the hospital feeling all right one morning, on the morning of the 28th of May as I have recorded and he was feeling about as good as usual. I carried him down to the emergency room to dress his leg as usual, and as usual there was considerable bleeding and as I was taking his leg and putting pressure on it to check the hemorrhage, or bleeding, I noticed he was losing more than I desired him to lose, I asked him if he was feeling all right, he said he was, I went ahead with it and I had my back turned towards his face and had hold of his right leg from below the injury and I turned around and I noticed he had a pallor. I asked him whether he was feeling all right, he replied he was feeling weak, and at that time he died. I attempted to save his life by every known means at my hand, but it seemed impossible.

"Q. What was the cause of his death? A. I think he died from a blood clot, or as we call it an embolism circulating in the blood stream and went to his blood vessels of his heart. The coronary arteries or little arteries that supply the heart muscle. It is such a frequent cause of sudden death.

"Q. Was that due to, or as a result of the wound inflicted on his leg? A. Yes, I would say that it was. It wasn't from any other cause that you could attribute, we know men die from heart attacks.

"Q. Did he have any symptoms of any other trouble that caused his death? A. The only contributory factor that could produce his death would be my own manipulation of him, which was one of those necessary things.

"Q. In trying to cure him from the wound inflicted, that was the result? A. Yes, sir; I put pressure on his vein, or leg artery in an attempt to stop it, a clot might have broken loose and kill him, but those are necessary things that go along with any injury.

"Q. The blood clot came from the wound and was the cause of the profuse bleedings? A. Not necessarily, the blood clot could have been anywhere in the circulatory system and turned loose could have been dangling like a thread hanging loose in any blood vessel and get loose and circle in the blood and be carried to the heart and kill him instantly.

"Q. The cause was the wound on his leg, the bullet wound? A. Yes, sir."

In the case of *State v. Foote,* 58 S. C. 218, 36 S. E. 551, 552, this Court approved the Trial Judge's charge which appears in part as follows: "It matters not whether death is attributable to the gunshot, but if it hastened his death, but for a minute, he would be responsible for the death. If a party is shot, and while getting well pneumonia sets in and caused his death, the gunshot wound would be the primary cause probably of his death, and he would be held liable. If a man receives a wound by which death is produced, the party inflicting it is liable for the consequences, although the deceased might have recovered by the exercise of more care and prudence, or with better treatment."

In the case of *State v. Chiles,* 44 S. C. 338, 22 S. E. 339. 341, where the State charged that the defendant had whipped his wife, as a result of which she developed pneumonia and later died, the following language of the Trial Judge was approved by this Court: "If the testimony here satisfies you beyond a reasonable doubt that this woman died of pneumonia, and that that pneumonia resulted from that whipping

given her by the defendant, and you are so satisfied beyond a reasonable doubt, why, you can find him guilty of murder or manslaughter, as you may see fit. But you must be satisfied beyond a reasonable doubt that her death resulted in consequence, of that whipping. I charge you, also, that if this woman's death was hastened by that whipping, and you believe that beyond a reasonable doubt, you could find the defendant guilty of manslaughter."

It is admitted that the wound, which was being treated at the time by Dr. Howell, was inflicted by the appellant, and Dr. Howell testified that the manipulation of the area was one of those things necessary for proper treatment and further that it was necessary to apply pressure in order to stop the bleeding.

One who inflicts an injury on another is deemed by law to be guilty of homicide if the injury contributes mediately or immediately to the death of the other. The fact that other causes also contribute to the death does not relieve the actor from responsibility. See *State v. Francis*, 152 S. C. 17, 149 S. E. 348, 70 A. L. R. 1133; *State v. Luster*, 178 S. C. 199, 182 S. E. 427.

It is therefore the opinion of this Court that all exceptions should be overruled, and it is so ordered.

Judgment affirmed.

FISHBURNE, STUKES and OXNER, JJ., and A. L. GASTON, A. A. J., concur.