19999

The STATE, Respondent, v. James Hiram FIELDS, Jr., Appellant.

(214 S. E. (2d) 320)

*Messrs. Keith A. Gatlin* and *John C. Hayes,* of *Hayes, Brunson and Gatlin,* Rock Hill, and *Frank Patton Cooke,* of Gastonia, N. C., *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Dep. Atty. Gen.,* and *Sidney S. Riggs, III, Staff Atty.,* of Columbia, and *Mike S. Jolly, Sol.,* of Union, and *William L. Ferguson, Asst. Sol.,* of Rock Hill, *for Respondent,*

April 16, 1975.

NESS, Justice:

Appellant was tried on an indictment charging him with the murder of one Marjorie Hampton on July 5, 1973, which trial resulted in a conviction of murder with a recommendation to mercy, and he was sentenced to life imprisonment. From that judgment and sentence he has appealed to this Court.

He first contends that the trial court abused its discretion in denying his motion for continuance so that an attorney from North Carolina could be present and actively participate during the presentation of evidence to the jury.

Generally, motions for continuance are addressed to the sound discretion of the trial judge whose denial of such motion will not be disturbed on appeal unless there is a clear showing of an abuse of discretion. 7A, South Carolina Digest, Key No. 586.

This Court held in *State v. Edwards,* 86 S. C. 215, 68 S. E. 524, and in *State v. Lytchfield,* 230 S. C. 405, 95 S. E. (2d) 857, that a motion for a continuance on the ground of the absence of leading counsel is properly denied, where defendant is duly represented by his other counsel, who in the instant case participated also in the prior trial which resulted in a mistrial. Also see 17 C. J. S. Continuances § 41, p. 419; 22A C. J. S. Criminal Law § 527, p. 225.

Appellant next asserts that he was denied his constitutional right to confront witnesses against him when the pathologist, Dr. Rutland, was not recalled for further cross examination by appellant's chief counsel. Section 26-301 *et seq.* of the South Carolina Code of Laws prescribes the method by which an out-of-state witness may be made available to the court; however, in the instant case

the trial judge was never requested to employ the provisions of this section. It appears, from the record, that Dr. Rutland was present in court for two (2) days, was called as a witness and cross examined on three (3) occasions by appellant's associate defense counsel, who after this consented to excusing Dr. Rutland, and therefore waived his right to further confront him. The witness had appeared and been cross examined by defense counsel. 21 Am. Jur. (2d), Criminal Law, § 333, p. 361; *State v. Steadman*, 216 S. C. 579, 59 S. E. (2d) 168; 7A, South Carolina Digest, Criminal Law, Key No. 1153(1), p. 462.

Exception seven is neither argued in his brief nor set forth in his statement and is deemed abandoned. Supreme Court Rule 8, § 2; *State v. Lawrence*, Filed 12/10/74.

The next exception relates to the jurisdiction of the court, appellant contending that there was no evidence that the fatal blow was struck in York County, South Carolina. The simple answer to this is § 17-454 of the South Carolina Code of Laws which provides, "when any person shall be struck—and shall die thereof beyond the limits of the State—the person so striking—shall be subject to indictment—in the county in which the—injury or ill-treatment was committed, in all respects the same as if the death had occurred in such county." *State v. Bostick*, 243 S. C. 14, 131 S. E. (2d) 841; 40 Am. Jur. (2d), Homicide, § 198, p. 478. The evidence, here, was clear that the deceased was assaulted in *Clover Grill, Clover, South Carolina;* also, there were two (2) other witnesses, a Mrs. Hullett and Mrs. Helms, who testified that they saw the deceased being beaten in York County; finally the defendant admits striking the deceased in York County. This exception is without merit.

The appellant contends that the trial judge was in error in failing to charge manslaughter. Defense counsel was questioned by the trial judge as to

whether they desired manslaughter to be charged and they informed the trial judge they did not wish it to be charged. This assignment of error is likewise without merit. *State v. Epes,* 209 S. C. 246, 39 S. E. (2d) 769; 7A, South Carolina Digest, Criminal Law, Key No. 824(1), 847 Cum. Supp.

Appellant next attempts to invoke the doctrine of *in favorem vitae.* We held in *State v. Anderson,* 253 S. C. 168, 169 S. E. (2d) 706, that this doctrine does not extend to cases in which a sentence of less than death is imposed.

The next exception relates to testimony relative to finding blood stains and hair in appellant's automobile. See 7A, South Carolina Digest, Criminal Law, Key No. 1153(1), p. 462, collecting cases which hold that evidentiary matters are within the discretion of the trial judge. And in 40 C. J. S. Homicide § 201, p. 1102 it is stated: "Proof of bloodstains at or about the place where violence is alleged to have been inflicted—is competent." Also in Section 215d the identical rule is said to be applicable to findings of hair as well as blood, Section 248(1) relates the principle that proof of the presence of bloodstains is evidence tending to prove the situs of the crime. *State v. Brown,* 101 S. C. 404, 85 S. E. 957.

The appellant next asserts error of the trial judge in failing to grant appellant's motion for a directed verdict. This exception contravenes Supreme Court Rule 4, § 6 as it is too general to warrant consideration by this Court. *City of Columbia v. Barr,* 239 S. C. 395, 123 S. E. (2d) 521; 7A, South Carolina Digest, Criminal Law, Key No. 753(2).

Appellant further contends that there was no evidence of malice, which he agrees may be either express or implied; however, the testimony reveals that the appellant told the deceased, "I'm going to kill you, god damn it." (Tr. Folio 362). Furthermore, malice may be

presumed from the intentional doing of an unlawful act without just cause or excuse. *State v. Fuller,* 229 S. C. 439, 93 S. E. (2d) 463.

Finally appellant contends that the trial judge's charge relating to the acceleration of the demise of a person in poor physical condition constituted a charge on the facts prohibited by the South Carolina Constitution. However, in *State v. Foote,* 58 S. C. 218, 36 S. E. 551 the exact exceptions to analogous instructions were overruled for reasons this Court finds impelling. Also see *State v. Doe,* 218 S. C. 520, 523, 63 S. E. (2d) 303; 40 C. J. S. Homicide § 11d, p. 855; *State v. Francis,* 152 S. C. 17, 149 S. E. 348, 70 A. L. R. 1133; 100 A. L. R. (2d) 769, 780.

We have examined the entire record relating to the aforestated exceptions and do not feel that any alleged prejudicial error was committed by the trial judge. We hold that the appellant had a fair and impartial trial.

Affirmed.

Moss, C. J., and LEWIS and LITTLEJOHN, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting):

Being convinced that the record in this case reflects more than one prejudicial error, and that the defendant did not obtain a fair trial, I most respectfully dissent. It is, of course, true that we have repeatedly held that motions for continuance are addressed to the sound discretion of the trial judge and in several cases have approved the denial of a motion for continuance on the ground of absence of so called chief counsel or leading counsel, but in my view, such cases are factually distinguishable from the instant case.

The death of the decedent occurred in Gastonia, North Carolina, and from the outset the accused defendant was represented by Mr. Frank Patton Cooke of the Gastonia, North Carolina Bar. Mr. Keith A. Gatlin of the Rock Hill Bar was associated by Mr. Cooke solely for procedural pur-

poses. This case was set, by special order of the court, for trial on March 11, 1974. During the week prior thereto Mr. Cooke became engaged in a murder trial in Lincolnton, North Carolina, which trial extended through Saturday of that week and was not concluded until some time on Tuesday, March 12, 1974.

When this case was called for trial on the morning of March 11th, Mr. Gatlin made a motion for a continuance because of the absence of Mr. Cooke. He advised the court that he had been associated only for a limited purpose; that he had been out of town on business over the weekend and had not learned until Sunday night that Mr. Cooke could not get away from the North Carolina murder trial; that he was not prepared to render the defendant a proper defense and stated that there were many witnesses with whom he he had never talked. The motion was denied, but the solicitor agreed to delay the commencement of the trial until Tuesday morning, March 12th.

On Monday night the judge presiding over the murder trial in Lincolnton, North Carolina called the trial judge presiding in this case informing him that the murder case there would be concluded during the day of March 12th, but that Mr. Cooke would likely not get back to York before Wednesday morning. On Tuesday morning Mr. Gatlin renewed his motion for a continuance with the solicitor opposing the case being continued even until Wednesday morning. Mr. Gatlin's motion was overruled and the case proceeded to trial in Mr. Cooke's absence with all of the evidence by the State being concluded on Tuesday before Mr. Cooke's arrival. The trial was finally concluded on the morning of Thursday, March 14th.

In fairness, there were some circumstances supporting the denial of a lengthy or indefinite continuance. The case had been previously continued in January since such could not begin until late in the week and it was anticipated that the trial would run into the weekend. A trial had been com-

menced in February, but a mistrial was ordered apparently for some irregularity prejudicial to the defendant and the State had had some difficulty apparently in getting its witnesses together in order to commence trial on the day set. On the other hand there is no question that Mr. Cooke was in fact the leading counsel in this case and that Mr. Gatlin, as represented by him to the court, was associated for a quite limited purpose and was not prepared to offer the defendant an adequate defense. It should be stated that his performance was creditable for one not adequately prepared. Our prior cases dealing with the refusal of motions for continuance apparently have turned primarily upon whether the refusal thereof worked prejudice to the defendant; this Court apparently never having fully set forth just what criteria or tests a trial judge should consider in the exercise of his discretion as to such motions. Other jurisdictions, however, had done so. In the case of *Giacalone v. Lucas,* 445 F. (2d) 1238 (6th Cir. 1971) the court outlined the following criteria:

"Proper exercise of this discretion requires a delicate balance between the defendant's right to adequate representation of counsel at trial, and the public interest in the prompt and efficient administration of justice. On the one hand, a court may not insist upon expeditiousness for its own sake, but, on the other, a defendant cannot be allowed to insist upon unreasonable delay or inconvenience in the completion of his trial. What is a reasonable delay varies depending upon all of the surrounding facts and circumstances. (Citation of numerous supporting authorities). Some of the factors to be considered in the determination of reasonableness are: the length of the delay requested; whether the lead counsel has associates prepared to try the case in his absence; whether other continuances have been requested and received; the convenience or inconvenience to litigants, witnesses, opposing counsel, and the court; whether the delay seems to be for legitimate reasons or whether it is purposeful and dilatory; and other relevant factors."

In the instant case I do not think the public's interest in the commencement of the trial on Tuesday morning would even commence to outweigh the defendant's right to adequate representation of counsel, which could have been afforded by delaying the commencement of the trial until Wednesday morning. I conclude that His Honor erred in refusing to grant a continuance until at least Wednesday morning, but if my conclusion in this respect be perchance incorrect, I have no doubt that the refusal of the motion for continuance coupled with a later ruling of the court had the effect, in any event, of depriving the defendant of a fair trial. Before proceeding to discuss the other issues, it is well to set forth some of the key facts of the case.

The decedent, Mrs. Marjorie Marie Hampton, aged 33, was, at least inferentially, an alcoholic who resided with her daughter in Goodwill Trailer Park in Gastonia, North Carolina. She had for some time prior to her death worked for and been the girl friend of the defendant at the Clover Grill operated by the defendant in York County, South Carolina. She came to her death at her trailer in Gastonia, North Carolina on the night of July 5, 1973, inferentially at about 8:45 p. m.; the precise time of her death not being established. She was brought to the trailer by the defendant a very few minutes before she expired. An autopsy was performed by Dr. Rutland of Gastonia, North Carolina, who gave as his opinion that Mrs. Hampton died from bleeding to death, "which resulted from a torn or lacerated liver due to blunt force which resulted in trauma to the liver." He testified that she had a grossly abnormal liver, 80% thereof having been replaced by lipid material which gave the liver a fatty appearance, which condition was related to the excessive consumption of alcohol. He further testified that due to the condition of her liver she bruised very readily and that she had numerous bruises, both old and new, about her person. The autopsy also showed that decedent was intoxicated at the time of her death. The State's charge of murder against the defendant was predicated on the theory that

he administered to her a beating sufficiently severe to cause the rupture of her liver.

There is evidence in the record to the effect that the decedent was quite drunk at the grill prior to the defendant taking her home; evidence as to her falling down and injuring herself in the vicinity of the grill. Under the medical evidence the liver injury could have been thus sustained. The appellant closed up the grill because of the drunkenness of the decedent and there is evidence on behalf of the State as to an altercation between the two while in the grill and reference to the decedent repeatedly being knocked into a chair. There is, however, no evidence on behalf of the State tending to prove that the appellant inflicted upon the decedent any injury of consequence while at the grill.

The defendant admittedly slapped the decedent in the face while in the car between the grill and the trailer in retaliation for her hitting him in the mouth, but denied having struck her any other blow. The strongest, if indeed not the only evidence on behalf of the State tending to prove an assault of any consequence, or the infliction of any injury of consequence upon the decedent by defendant, is the testimony of a Mrs. Hullett, who testified that while driving along the highway she saw a blue car fitting the description of the defendant's car turn into a side road and stop, and that a man therein was striking a woman about the head and shoulders. She viewed such, according to her testimony, about two seconds, drove down the highway a short distance, turned around and came back, and when she next saw the car it was in motion. She knew neither of the parties and did not get the license number of the automobile. If it was, in fact, the defendant who was observed by Mrs. Hullett, this incident occurred, according to her testimony, between 8:15 and 8:30 p. m., less than 30 minutes prior to the expiration of the decedent.

It appears that at the trial in February Dr. Rutland was asked by Mr. Cooke his opinion as to the probable time that

elapsed between the infliction of the trauma, which he thought caused the ruptured liver, and the death which followed, and that in response thereto Dr. Rutland testified that in his opinion the trauma occurred any where from an hour and a half to two hours before her demise. Other testimony in the record from Dr. Rutland conceded that the ruptured liver could have been caused from the decedent falling down. It is obvious that if the doctor was correct in his opinion as to the time element involved, the assault which Mrs. Hullett testified she observed 30 minutes prior to decedent's death, could not have been the cause of the rupture, a most reasonable inference from all of the evidence being that such occurred when she fell down drunk in the vicinity of the grill.

In the course of the cross-examination of Dr. Rutland at the March trial, Mr. Gatlin either did not recall such prior testimony of Dr. Rutland or else was not familiar enough with the case to recognize the significance thereof. In any event Dr. Rutland was not questioned about the time elapsing, in his opinion, between the trauma and the demise of the decedent.

When Mr. Cooke arrived in court and found that the doctor had not been questioned thereabout he attempted in every possible way to get this critical testimony before the jury. It appears that some difficulty had been theretofore experienced in getting Dr. Rutland to court and there was no way to get him back to court except by an application to and an order of a judge in North Carolina. He being thus, for all practical purposes, unavailable, Mr. Cooke sought to offer in evidence the reporter's tape from the February trial which contained this vital testimony of the doctor, but His Honor excluded such. Under the circumstances I am of the opinion that this evidence should have been admitted and that its exclusion was erroneous and highly prejudicial. Such, coupled with the prior refusal to continue the case until Wednesday morning, resulted in the defendant being deprived of the benefit of evidence, which if believed by the jury, would have warranted acquittal.

In addition to the foregoing, it is my view that there was prejudicial error in the charge, requiring a new trial. The facts of this case, of course, called for His Honor to charge the law applicable to the acceleration of the demise of a person in poor physical condition by a felonious assault. Unfortunately His Honor, as asserted by the appellant, used language which rendered his charge one upon the facts in violation of the Constitution. To put the matter in the proper perspective, in the case of *State v. Foote,* 58 S. C. 218, 36 S. E. 551, cited by Mr. Justice Ness, there apparently was no dispute about the shot having been fired by the defendant. In the instant case the defendant denied any assault, attack, or infliction of injury whatever upon the deceased other than a single slap to the face in retaliation for a blow by the decedent to his mouth. Language used by His Honor in the charge assumed the truth of the State's evidence and carried with it the implication that His Honor believed such to be true. I quote only parts thereof as follows: "The vitality which the victim possessed *at the moment of accused's attack* and the fact that she would have lived for only a short time in any event are immaterial considerations . . . It is immaterial *that accused did not* know that the deceased was in the feeble condition *which facilitated the killing* or that he did not reasonably anticipate that his act would cause death;". He charged, *inter alia,* that the defendant would not be liable if the death was "not caused or hastened by *the injury inflicted by the accused."* All such clearly implied to the jury. I think, that His Honor, fully believed that defendant had truly attacked and seriously injured the decedent, but was leaving to the jury only the issue of whether such caused or accelerated her death.

I would reverse and remand for a new trial.