## 20191

J. Allen MARTIN, Respondent, v. James B. ELLISOR, Executive Director of the South Carolina Election Commission, Appellant.

(223 S. E. (2d) 415)

*Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Dep. Atty. Gen., Joseph R. Barker* and *Treva G. Ashworth, Asst. Attys. Gen.,* of Columbia, *for Appellant,*

*Addison G. Wilson, Esq.,* of West Columbia, *for Respondent,*

March 16, 1976.

NESS, Justice:

The issue is whether the petitioner-respondent may demand a copy of a computer tape, which contains the names and addresses of all registered electors, from the Executive Director of the South Carolina Election Commission. The respondent relies upon S. C. Code § 23-31 (1974 Cum. Supp.), which sets forth the duties of the Election Commission and its Executive Director, and S. C. Code § 1-20

*et seq.* (1974 Cum. Supp.), the Freedom of Information Act.

The trial judge held the statutes supported the petitioner's claim. We affirm the judgment of the trial court and hold the respondent was entitled to a copy of the tape under S. C. Code § 23-31. Having so concluded, it becomes unnecessary for us to consider the application of the Freedom of Information Act.

The respondent, J. Allen Martin, a qualified elector, is Director of Research for the South Carolina Republican Party. He has agreed to pay a reasonable price for the costs incurred in reproducing the computer tape, which is presently maintained by the Election Commission. The Election Commission denied his request.[1] It was willing to provide the identical information in the form of a computer printout or microfiche. Reproduction of the computer tape is vastly less expensive than the computer printout, but more costly than the microfiche. For the purpose of this appeal, we do not consider the varying costs of reproducing the information to be material. Martin is willing to pay the cost of reproducing the tape *and* reproduction of it places no greater burden upon the Election Commission than either other available method of providing the list of electors.

The Commission contends the statutes are designed to provide information to the public, but the form used to deliver information is immaterial. Moreover, the Commission fears the computer tape may be used for commercial exploitation by distributors of mass mailing, and cite pornographers as one example.

The trial court construed the statutes together. In a portion of his order which deals with § 23-31, concerning the duties of the Election Commission, the trial judge observed:

---

[1] Martin does not contend the Commission's position is politically motivated. The Commission is composed of Democrats and Republicans and its current policy was adopted in 1967 by unanimous vote. Furthermore, in 1972 request by then Governor John C. West to supply both the S .C. Democratic and Republican Parties a copy of the tape was denied by the Commission.

"The refusal of the Respondent to allow the Petitioner to purchase the voters list in the less expensive and less time consuming computer tape form does not appear to have any statutory basis, but rather appears to be based upon the subjective apprehensions of the commission and therefore appears to be in conflict with the 'reasonable price' requirements of the statute." (Referring to S. C. Code § 23-31 [C] 11).

In another part of his order, the trial judge disposed of the Commission's contention that Martin was not entitled to the tape under the Freedom of Information Act. The Commission relied upon the following section of that Act:

"Nor shall the definition of public records include those records concerning which it is shown that the public interest is best served by not disclosing them to the public." S. C. Code § 1-20.1.[2]

The court replied:

"The Election Commission takes the position that this language in the 'Freedom of Information Act' gives it the discretion to use its judgment to determine the form in which the lists of registered electors shall be furnished to the public. Even if that be true it would appear to me that the Republican Party of South Carolina is one public political organization that would have a paramount proper interest and right to be furnished by the Election Commission with the lists of names of registered electors in South Carolina in the most convenient and least expensive form possible."

Section 23-31(C)(1); (11) directs the Executive Director of the State Election Commission to:

"Maintain a complete roster of all qualified electors by county and by precincts;" and to "furnish at [a] reasonable

---

[2] The Commission recognizes that the information it would furnish is the same as the tape, however, it argues the printouts and microfiche would not create any likelihood of commercial exploitation. The cost of converting the printout and microfiche into computer tape would be prohibitive.

price *any and all* precinct lists to any qualified elector requesting same." (Emphasis added).

Although this Court may disagree with the wisdom of the statute, we have no license to substitute our judgment for that of the legislative and the executive branches. Excepting constitutional issues, the sagacity of a statute, by axiom stamped with the approval of the law making branches of government, or, in the event of executive veto, the overwhelming concurrence of the legislative branch, is never the subject of judicial review or reform. *Creech v. South Carolina Public Service Authority,* 200 S. C. 127, 20 S. E. (2d) 645 (1942).

What rights were conferred upon qualified electors by the enactment of Section 23-31(C)(11)? The statute states without equivocation that "any and all precinct lists" are to be supplied upon payment of a reasonable charge. Our task is merely to apply the statute.

Various rules of statutory construction have been employed by courts, however, each of them is subservient to the goal of achieving the manifest intention of the Legislature. The vitality of any rule of construction is dependent upon the assistance it renders the court in its endeavor to ascertain the legislative purpose. *Lewis v. Gaddy,* 254 S. C. 66, 173 S. E. (2d) 376 (1970); *City of Columbia v. Niagara Fire Ins. Co.,* 249 S. C. 388, 154 S. E. (2d) 674 (1967).

When, as here, the statute is plain and unambiguous, it becomes the duty of the court to apply it literally because the legislative design is unmistakable. *Perry v. Minit Saver Food Stores of South Carolina, Inc.,* 255 S. C. 42, 177 S. E. (2d) 4 (1970); *Southeastern Fire Ins. Co. v. S. C. Tax Commission,* 253 S. C. 407, 171 S. E. (2d) 355 (1969); *Gunnels v. American Liberty Ins. Co.,* 251 S. C. 242, 161 S. E. (2d) 822 (1968). This rule of literal application may be forced to yield, but only when its application would produce an absurd result. In those in-

stances the supporting rationale is that the Legislature would not have intended an absurdity; the court does not reform the statute. *State v. Montgomery*, 244 S. C. 308, 136 S. E. (2d) 778 (1964); *Stackhouse v. County Board of Commissioners for Dillon County*, 86 S. C. 419, 68 S. E. 561 (1910). Moreover, this Court may not countenance judicial fiat by declaring certain applications of a statute "absurdities." It is when the wisdom of a statute is least appealing to us that we must most carefully resist natural inclinations to think its application "absurd." When those situations arise, often times it is not the application which is absurd, but the judgment, properly within the legislative domain, that a court may find injudicious.

■ The statute is explicit, admitting of no construction or application other than that which it clearly demands. It requires that the Executive Director of the Election Commission furnish "any and all precinct lists" to any qualified electors.

The Commission concedes the computer tape was in existence, or at least that it was being assimilated, when the statute was enacted in 1967.[3] Since then, the Commission has advanced the fears that if the tape is reproduced, the public may suffer dreadfully.

Apparently, the Legislature favored the right of every qualified voter to secure a copy of the tape, which admittedly could be used for "legitimate purposes," to be more important than potential misuses of the tape by commercial exploitation. Thus, even if we assume the purpose of the statute is doubtful, the circumstances and conditions appertain-

---

[3] Transcript, Page 26, 27 testimony of James B. Ellisor, Executive Director of the South Carolina Election Commission:

"Q. Do you know the year this statutory provision, 23-31(11) was enacted?

"A. It was enacted in June, 1967, originally and then re-enacted in 1968 to create the State Election Commission.

"Q. Was the Election Commission using the tapes prior to the enactment of this provision?

"A. Well, we began using the computer tapes in 1967 when central voter registration was first created."

ing at the time of its enactment convince us that, if the computer tape containing a precinct list of qualified electors was to be excluded from "any and all precinct lists," the Legislature would have so provided. See *Sherbert v. Verner,* 240 S. C. 286, 125 S. E. (2d) 737 (1962); *Abell v. Bell,* 229 S. C. 1, 91 S. E. (2d) 548 (1956).

Affirmed.

LITTLEJOHN and GREGORY, JJ., concur.

LEWIS, C. J., and JOSEPH R. Moss, Acting Associate Justice, dissent.

LEWIS, Chief Justice (dissenting):

The South Carolina Election Commission, through its Executive Director, is required to maintain a complete roster of all qualified electors by county and precincts and to "furnish at reasonable price any and all precinct lists to any qualified elector requesting same." Section 23-31, Supplement to 1962 Code of Laws. Respondent requested a list of all registered electors and appellant agreed to furnish the information in the form of a computer print-out or microfiche. Respondent, instead, demanded that the list of registered voters be furnished in the form of a computer tape. A computer tape of the information is, admittedly, considerably less expensive to respondent than the computer print-out or microfiche.

The majority opinion, in effect, holds that the mandate to the appellant to furnish the list of registered voters "at reasonable price" means that appellant is required to furnish the list to an applicant in the least expensive form. I disagree.

The list of registered voters is maintained solely for use in conducting elections in South Carolina, and appellant has the duty and responsibility to take all reasonable measures and precautions to see that the integrity of the list of voters is maintained for that purpose.

While the motives of respondent are not questioned, it is undisputed that the potential for misuse of the list maintained by appellant is great and that his decision to refuse to furnish the list to any applicant in the form of the computer tape was based solely upon the conclusion that the more expensive computer print-out would minimize the danger of the use of the list for commercial exploitation.

The statute, as the majority says, does plainly and unambiguously require that the information be furnished at a "reasonable price." No where have I found, nor does the majority cite, authority for the embraced proposition that "reasonable price" means the "least price." What is a "reasonable price" depends upon a variety of considerations. Here it would depend upon the form in which the information is required to be furnished. No one argues that the price asked by appellant for the computer print-out is not a reasonable price for furnishing the list of voters in that form.

The question then is not whether the price is reasonable but whether respondent can dictate the form in which the information will be furnished, based solely upon the fact that another method or form is cheaper than that offered by appellant. Neither Section 23-31, *supra,* nor the Freedom of Information Act (Code Section 1-20 *et seq.*) explicitly, or by reasonable interpretation, confers any such right upon the respondent, or any other applicant for a list of registered voters.

While the majority argues, at length, that the statute is "plain and unambiguous," it has failed to state the *plain and unambiguous* provisions which require appellant to furnish the list of voters in a particular form simply because it is least expensive to the applicant. No other reason is claimed as the basis for the majority's conclusion.

Appellant had the right to determine the form in which the information would be furnished and his decision should not be reversed in the absence of a showing that it was

arbitrary and unreasona'ble. Such has not been shown, asserted by respondent, or found by the majority.

I would reverse the judgment of the lower court.

JOSEPH R. Moss, Acting Associate Justice, concurs.