20355

Buster HENDERSON, Appellant, v. Lawrence EVANS et al., Respondents.

(232 S. E. (2d) 331)

*James R. Thompson, Esq., of Saint-Amand, Thompson
& Brown,* Gaffney, *for Appellant,*

*Messrs. Hall, Hall, Daniel & Winter,* of Gaffney, *for Re-
spondents,*

February 3, 1977.

Ness, Justice:

Appellant instituted this action to foreclose a mechanic's lien and to recover the balance due on a construction contract. The trial court granted summary judgment in favor of the respondents. We reverse.

In February of 1975 appellant contracted to construct respondent's home. The agreed contract price was $28,528.00 of which $26,000.00 has been paid. The respondents have refused to pay the balance of the debt alleging the unenforceability of the contract under Section 56-1545.31 *et seq.*, Code of Laws (Cum. Supp. 1975), as well as defective workmanship. The trial judge, granting summary judgment because appellant did not have a license when the contract was executed, construed Section 56-1545.43 to render the contract unenforceable.

Section 56-1545.37 requires that all residential home builders be licensed annually in compliance with the licensing standards of the Act regulating home builders, "except that any person engaged in residential home building on or before July 1, 1974, shall be duly licensed . . . without examination, after paying the required annual fee by submitting to the Commission *within a period of twelve months* after such Commission is established the following: (a) An affidavit showing that such residential home builder has constructed a minimum of one residential home within a year prior to July 1, 1974; and (b) An executed bond . . ." (Emphasis added.)

Respondents assert a construction of the statute, based on the legislative intent to require proof of financial responsibility, to mean that the appellant should have obtained a license immediately after July 1, 1974, in order to legally continue to operate his business. Yet, the statute in plain, unambiguous language allows an established residential home builder twelve months in which

to legally continue his operation and obtain the requisite license.

The following provisions leave little room for interpretation. "All residential home builders shall be required to be licensed . . . *except* that any person engaged in residential home building on or before July 1, 1974, shall be duly licensed . . . without examination . . . within a period of twelve months . . ." (Emphasis added.) The exclusion modifies and qualifies the basic licensing mandate. Such provisions which insure orderly transition periods for the implementation of new legislation are not uncommon. There is no evidence that appellant did not come within the purview of the exception when he entered into the instant contract. Having twelve months within which to obtain a license, appellant as an established residential home builder could operate during the period allowed by the statute.

"When, as here, the statute is plain and unambiguous, it becomes the duty of the court to apply it literally because the legislative design is unmistakable." *Martin v. Ellisor,* 266 S. C. 377, 381, 223 S. E. (2d) 415, 417 (1976). Any other construction of the statute would be amendatory; certainly it is not the province of this Court to perform legislative functions. *Coker v. Nationwide Ins. Co.,* 251 S. C. 175, 161 S. E. (2d) 175 (1968).

The legislature specifically enunciated in Section 56-1545.43 the legal sanctions attendant to violation of the chapter:

"Any residential home builder who undertakes or attempts to undertake the business of residential home building without first having procured a valid license which has neither expired or been revoked required by the provisions of this chapter or who knowingly presents to, or files false information with, the Commission for the purpose of obtaining such license shall be deemed guilty of a misdemeanor and upon conviction, shall be fined not less than one hundred dollars or imprisoned for not less than thirty days.

"No residential home builder who does not have the license required herein may bring any action either at law or in equity to enforce the provisions of any contract for residential home building which he entered into in violation of this chapter.

"Whenever it shall appear to the Commission that any residential home builder has or is about to violate the provisions of this chapter the Commission may in its own name petition the court of common pleas of the county wherein the violation occurred or is about to occur to issue a temporary restraining order enjoining such violation of this chapter pending a full hearing to determine whether or not the injunction should be made permanent."

Appellant steadfastly maintained, and couched his exceptions on the proposition, that he was not in violation of the Act. When appellant entered into the contract, in the instant case, he was within the statutory exception and, furthermore, he completed construction of the residence within the twelve month period. There was no legal infirmity in the contract at its inception or at its completion when the contractual obligation became due.

The legislature intended only one penal sanction for the violation of this Act: a misdemeanor fine as provided in the first paragraph of Section 56-1545.43. The second paragraph is merely a self-enforcing provision which precludes suit on any contract "entered into in violation" of the Act *until* a license is procured. Appellant was not in violation of this Act when he entered into, or completed, the instant contract and he subsequently acquired a license, prior to this action.

There is yet another paramount consideration which dictates our resolution. A statutory construction which retroactively deprives a party from pursuing his rights pursuant to a legal contract is not only manifestly inequitable, it is an unconstitutional impairment of contractual obligations. S. C. Constitution, Article 1, § 4 (as

amended) ; U. S. Constitution, Article 1, § 10; *Henry v. Alexander,* 186 S. C. 17, 194 S. E. 649 (1937); *Martin v. Saye,* 147 S. C. 433, 145 S. E. 186 (1928); *Smith v. Jennings,* 67 S. C. 324, 45 S. E. 821 (1903). Constitutional constructions of statutes are not only judicially preferred, they are mandated; a possible constitutional construction must prevail over an unconstitutional interpretation. *Casey v. S. C. State Housing Authority,* 264 S. C. 303, 215 S. E. (2d) 184 (1975); *Thompson v. Hofmann,* 263 S. C. 314, 210 S. E. (2d) 461 (1974); *Peoples National Bank of Greenville v. S. C. Tax Commission,* 250 S. C. 187, 156 S. E. (2d) 769 (1967).

It is clear that the appellant was not in violation of the Act when he entered into the contract, when he completed the contract, or when he instituted this action. To conclude he is not entitled to collect a legal debt owed to him, would be manifestly unjust and constitutionally defective. We, therefore, reverse the order of the trial court and remand for such proceedings as the parties may desire consistent with this opinion.

Reversed and remanded.

LEWIS, C. J., and LITTLEJOHN and RHODES, JJ., concur.

GREGORY, J., dissents.

GREGORY, Justice (dissenting) :

I disagree with the construction placed by the majority on the statutory provisions involved and, therefore, dissent.

Henderson, a home-building contractor, appeals an order granting summary judgment to defendants in an action to foreclose a mechanic's lien and to recover the balance due on a construction contract. The lower court held that Henderson was barred from legal action because he entered into the contract in violation of Act 897, Acts of 1974 of the General Assembly of South Carolina (hereinafter "Act"; codified as § 56-1545.31 *et seq.,* Code of Laws of South Carolina, Cum. Supp. 1975). The exceptions present one issue:

did a "grandfather clause" in the Act (in § 56-1545.37) give Henderson the right to continue his contracting business without the license required by the Act, or did the clause merely exempt him from taking an examination to get the license?

Briefly, the facts are these. In late February of 1975, Henderson and Mr. and Mrs. Lawrence Evans entered into a contract for the construction of the Evanses' home. The contract price was Twenty-Eight Thousand Five Hundred and Twenty-Eight ($28,528.00) Dollars. Henderson completed the house by the end of June 1975 and was paid Twenty-Six Thousand ($26,000.00) Dollars of the contract price. The Evanses refused to pay the balance. On October 2, Henderson filed a mechanic's lien and on December 31, served a summons and complaint to foreclose the lien. The answer denied liability because of Henderson's workmanship and further asserted that the contract was unenforceable under the Act. The trial judge ordered summary judgment on March 5, 1976 on the grounds that (1) Henderson did not have the license provided for in the Act when he entered into the contract with the Evanses and (2) by its express terms the Act prohibited any action either at law or in equity to enforce a contract in violation thereof. It is undisputed that Henderson did not have the license in February of 1975, but only obtained it on November 21, 1975, after applying for it (on November 18) and taking an examination.

To decide whether the trial judge erred we must examine and construe the Act. In so doing we must discover the legislative intent and effect it. *Green v. Thornton,* 265 S. C. 436, 219 S. E. (2d) 827 (1975) ; *McGlohon v. Harlan,* 254 S. C. 207, 174 S. E. (2d) 753 (1970). I think the court below correctly construed the Act and would affirm the order.

The Act created the South Carolina Residential Home Builders Commission (hereinafter "Commission"). The

Commission was to regulate "residential home builders"—essentially any persons who build homes for sale or for the use of others. (See § 56-1545.32.) It is undisputed that Henderson was a "residential home builder." The Commission was given the power to license contractors, revoke licenses upon findings of misconduct or incompetence in building, and make rules. Penalties were provided for. The Act was apparently designed to complement Chapter 7, Title 56, *Code*, 1962, as amended, which relates to "Contracting." That chapter created a State Licensing Board for Contractors, which was to regulate, *inter alia,* general contractors who undertook projects costing more than Thirty Thousand ($30,000.00) Dollars each (§ 56-401, *Code*, Cum. Supp. 1975). The Act exempted from licensing those contractors who were already licensed under Chapter 7 (§ 56-1545.44, *Code*, Cum. Supp. 1975). Thus, when read along with Chapter 7, the Act required only those contractors whose costs for each contract were less than Thirty Thousand ($30,-000.00) Dollars to be licensed by the Commission.

The effective date of the Act and the date of the establishment of the Commission was July 1, 1974.

The penalties section, § 56-1545.43, comprises three paragraphs. The first paragraph makes it a misdemeanor for any residential home builder to undertake the business of residential home building without "first having procured a valid license . . . required by the provisions of this chapter . . .." The third paragraph of the section gives the Commission authority to petition for a temporary restraining order if its members believe that a builder has, or is about to, violate the provisions of the Act. The second paragraph, relied upon by the lower court in its order, provides:

"No residential home builder who does not have the license required herein may bring any action either at law or in equity to enforce the provisions of any contract for residential home building which he entered into in violation of this chapter."

The trial judge read this provision as meaning that Henderson could not bring his action if he had entered into the contract with the Evanses "in violation of this chapter." The trial judge found such a violation. He held that because Henderson did not have a license when he entered into the contract with respondents, he was in violation of the Act. The holding raises the issue: did the "grandfather clause" in § 56-1545.37 allow Henderson to contract with the Evanses without a license, or did that clause merely authorize him to obtain a license without examination? The clause in question is contained in the following:

"§ 56-1545.37. *Licenses required; exceptions; fees.*—All residential home builders shall be required to be licensed by the Commission annually under the provisions of this chapter except that any person engaged in residential home building on or before July 1, 1974, shall be duly licensed by the Commission, without examination, after paying the required annual fee by submitting to the Commission within a period of twelve months after such Commission is established the following: [an affidavit showing that the builder has constructed at least one home within the year prior to July 1, 1974; and an executed bond or other proof of financial responsibility acceptable to the Commission]."

Appellant contends that this language authorized an already-practicing builder to continue building residential homes for twelve months after July 1, 1974, without obtaining a license. I disagree. § 56-1545.37 empowered builders already engaged in business to get a license without taking an examination; it does no more. The section begins, "All residential home builders shall be required to be licensed . . . under the provisions of this chapter except . . .." The phrase, "under the provisions of this chapter" refers to § 56-1545.38, which sets out the method of licensing; *i. e.,* by written application and examination. The "except" in the language quoted above only excepts the method of licensing. It does not except the licensing requirement itself.

The purpose of the Act was to regulate builders of homes who were not already regulated by Chapter 7, Title 56. § 56-1545.37 required a builder to offer proof of financial responsibility and proof of some recent experience in home building before he could obtain a license. There would be little point to these requirements if the builder could first have decided for himself whether he met the requirements and then have continued to build for twelve months without offering the Commission any information about himself.

Nowhere in the Act does the language indicate that a builder might have continued his business without first obtaining a license. The penalties section (§ 56-1545.43) says flatly that a builder shall be guilty of a misdemeanor if he engages in residential home building "without first having procured a valid license . . . required by the provisions of this chapter." § 56-1545.40 requires the Commission to furnish clerks of courts throughout the State with a roster of licensees. Presumably this section is intended as a method of informing the courts of those builders approved by the Commission. If the Act is read as appellant suggests, this roster would not have informed a clerk of those builders carrying on business, but without a license, during the period of July 1, 1974 to July 1, 1975. Further, as I have stated, the Act is complementary to § 56-401 *et seq.*, relating to "Contracting." Those sections require a contractor to have a license before he enters into any contract covered by the sections, without exception. (See especially § 56-427, *Code,* 1962 and § 56-410, *Code,* Cum. Supp. 1975.)

I think that the intent of the Act was to protect the home-buying public from inexperienced and financially irresponsible builders. To read § 56-1545.37 as appellant does would not further this intent. Henderson did not have a license in February of 1975 and did not obtain one until November 21, 1975. I conclude that § 56-1545.37 did not give Henderson the right to continue his contracting business without a license; therefore, he was in violation of the Act when he entered into the contract with respondents.

The record presents an issue neither raised by appellant nor considered by the trial judge: can the penalties section, § 56-1545.43, be interpreted to allow Henderson to sue because he obtained a license before he brought suit? This issue is not properly before the Court and I do not consider it. See *State v. Fields,* 264 S. C. 260, 214 S. E. (2d) 320 (1975).

Appellant concedes that if he had entered into the contract after July 1, 1975, without first obtaining a license, enforcement of the contract would be barred. He only argues that the "grandfather clause" permitted him to contract between July 1, 1974 and June 30, 1975 without a license. Appellant does not contend that he can bring suit for foreclosure notwithstanding a violation of the Act.

Accordingly, I would affirm the order of the lower court granting summary judgment to respondents.