## 19908

John R. GAREY and Edmund J. Lucia, as Representatives of All Citizens and Electors of Myrtle Beach, South Carolina and C. Donald Cameron, as Intervenor, Plaintiffs, of whom C. Donald Cameron, as Intervenor, is Appellant, v. The CITY OF MYRTLE BEACH, South Carolina, et al., Respondents.

(209 S. E. (2d) 893)

*Messrs. John C. Lindsay,* of Bennettsville, and *Henry Hammer* and *Isadore S. Bernstein,* of Columbia, *for Appellant,*

*Messrs. McKay, Sherrill, Walker, Townsend & Wilkins,* of Columbia, *for Charles E. Cook, Robert J. Hirsch, Respondents,*

*William M. Bruner, Esq.,* of Myrtle Beach, *for City of Myrtle Beach, Respondent,*

*Messrs. John C. Lindsay,* of Bennettsville, and *Henry Hammer,* and *Isadore S. Bernstein,* of Columbia, *for Appellant,* in Reply.

November 13, 1974.

*Per. Curiam:*

This case is before us on appeal from the Order of the Honorable James A. Spruill, Jr., Presiding Judge, the Court of Common Pleas for Horry County. We are of the opinion that his Order properly sets forth and disposes of the question raised on appeal to this Court. Let his Order, with deletions and changes we have made of matters not necessary to the disposition of the question involved, be printed as the directive of this Court.

## ORDER OF JUDGE SPRUILL

This action is brought pursuant to the Declaratory Judgments Act to have the Court determine the requirements of Chapter 7 of Title 47 of the South Carolina Code of Laws for 1962 as to the composition of the governing body of the City of Myrtle Beach under the "Council-Manager Form of Government" and, likewise, to determine when an election should be held and whether such election should be for two additional councilmen or for a new mayor and six new councilmen.

This action was brought by two interested citizens and named the City of Myrtle Beach and the Mayor and the four City Councilmen as defendants. An Answer was filed by the City of Myrtle Beach. To this point this action was much in the nature of a friendly suit. However, at this point, C. Donald Cameron, intervened as a party plaintiff and thereafter Mayor Robert J. Hirsch and Mr. Charles C. Cook, one of the four Councilmen, answered and counterclaimed and the action became fully adversary.

On November 6, 1973, the City of Myrtle Beach held a referendum, pursuant to an appropriate resolution adopted by the City Council, for the adoption of the "Council-Manager Form of Government" and as a result of this election, the aforesaid form of government was adopted by a vote of 2,105 to 501. In the same election, a mayor and two coun-

cilmen were elected as required by the form of government then in force, which was the commission form as governed by Chapter 6, Title 47, of the South Carolina Code of Laws of 1962.

Subsequent to said election, the incumbent City Council on December 18, 1973, by resolution, unanimously declared the "Council-Manager Form of Government" to be in effect. Thereafter, on January 1, 1974, the incumbent Council passed a resolution setting the date of May 7, 1974 for a general election for the election of a mayor and six councilmen. On January 8, 1974, the newly elected mayor and council rescinded the aforesaid resolution for a general election and since that time no election has been called.

Prior to the municipal general election held on November 6, 1973, the City Council was comprised of Mayor Mark C. Garner and Councilmen Cook, Farlow, Donkle and Singleton (hereinafter called the "Prior Council"). All of the members of the Prior Council had been elected under the Commission form of government described in South Carolina Code, Section 47-481 *et seq.* (1962). Under those provisions the Mayor served a four-year term, and councilmen served staggered four-year terms.

In August of 1973, prior to the 1973 general election, the Prior Council unanimously adopted the Uniform Municipal Elections Law, S. C. Code, Section 47-57.11 *et seq.* (1973). Consequently, the general election on November 6, 1973, was subject to the terms of that act.

The general municipal election held on November 6, 1973, was for the purpose of electing a Mayor and two Councilmen. Councilmen Cook and Farlow had been elected for terms to expire on December 31, 1975, and their seats were not involved in the general election. As noted, a special election was held concomitantly with the general election for the purposes of determining whether the City should adopt the Council-Manager form of government described in S. C. Code, Section 47-691 *et seq.* (1962), hereinafter called

"Chapter 7". In the general election, the Defendant, Robert C. Hirsch, was elected as Mayor and Messrs. Vereen and Holland were elected as Councilmen. Additionally, as stated above, in the special election the Council-Manager form of government was adopted, and by its terms it became effective December 6, 1973.

On January 1, 1973, the Prior Council adopted a resolution calling for an election of a new Mayor and six Councilmen. On January 1, 1973, the newly elected Mayor, Robert J. Hirsch, and the newly elected Councilmen, Messrs. Vereen and Holland, assumed office and shortly thereafter the New Council rescinded the call for the election.

The Intervenor asserts that because a new form of government has been adopted and because the responsibilities and powers of City officers under the Council-Manager form of government are different from those under the Commission form of government, a new election for a Mayor and six Councilmen is required. The Defendants Hirsch and Cook insist that they and the other individual Defendants continue in office and that it is only necessary to elect two new Councilmen in order to increase the Myrtle Beach City Council from the four under the prior form of government to the six required under the new form of government. It is necessary for the Court to determine which of these positions is correct.

Chapter 7 contains thirteen Articles comprised of 124 separate sections. None of these sections explicitly require a new general election. In fact, it is clear from a reading of Chapter 7 that the Legislature intended for the transition to the Council-Manager form of government to be effected with as few disruptions as possible. For example, in Section 47-692 of Chapter 7, all of the City's rights, powers, duties and obligations not expressly or impliedly repealed, are retained. In Section 47-697 of Chapter 7, only inconsistent laws are repealed, and where provisions of Chapter 7 are the same in terms, substance or effect as prior law, there is

a mandate to construe the new provisions of Chapter 7 as a continuation of prior law.

More specific is Article 2 of Chapter 7, entitled "Succession in Government." Section 47-699.13 retians present personnel, while Section 47-699.14 continues contracts and Section 47-699.15 continues pending actions or proceedings. Even more specific is Section 47-699.12 which provides:

"Nothing in this chapter contained, except as hereinafter provided, shall affect or impair the rights or privileges of *officers* or employees of the city *or of any office,* department or agency existing at the time when this chapter shall take effect *or any provision of law* at the time when this chapter shall take effect and not inconsistent with the provisions hereof, in relation to the personnel, appointment, ranks, grades, *tenure of office,* promotion, removal, pension and retirement rights, civil rights or any other rights or privileges of officers or employees of the city *or any office,* department or agency thereof." (Emphasis supplied.)

In the writer's opinion, the provision quoted above is a clear indication of the legislative intent not to terminate the terms of those persons elected to office before the Council-Manager form of government took effect. In this connection it is to be noted that the City of Myrtle Beach continues to be the same municipality with the same boundaries and the same population. Under the new form of government as under the old it continues to have a Mayor and Council. While the duties and the responsibilities of the Mayor and Council are somewhat different under the new form of government, they are still the Mayor and Council of the City of Myrtle Beach. In the writer's opinion, the consequences of the change are by no means the same as would follow from the merger of a city and a county and the creation of a new City-County Government.

The Intervenor argues forcefully that the referendum and the subsequent adoption of the "Council-Manager Form of Government" by the Prior Mayor and Council had the effect

of terminating the office of the two hold-over Councilmen, the two new Councilmen and the new Mayor. In urging this the Intervenor relies especially on the following:

The last sentence of Section 47-694, which provides:

"If the electors vote to adopt the council-manager form of government, then it shall become effective thirty days after its adoption in the referendum by a majority of the voters."

Sec. 47-699.11—"The first fiscal year, as established by Section 47-699.81 shall commence on the first day of July following the adoption of this chapter."

Sec. 47-699.21—"The mayor and six councilmen shall be termed 'the council' and shall be the governing body of the city."

Sec. 47-699.22—"The composition of the council, number of councilmen, their election and terms shall be as follows:

"(1) A mayor shall be elected from the city at large in the manner provided by law. In the first election held under this chapter the mayor shall be elected for a term of three years, and thereafter his successors in office shall be elected for terms of four years respectively.

"(2) Six councilmen shall be elected from the city at large in the manner provided by law. In the first election held under this chapter the three candidates receiving the highest votes shall serve for terms of three years each, and the three candidates receiving the next highest vote shall serve for terms of one year each, and thereafter their successors shall be elected for terms of four years each."

While it would be drastic action to terminate the terms of all existing municipal officers on the adoption of a new form of municipal government, such action could be required by legislative mandate. In this connection it is interesting to compare and to contrast provisions of Chapter 6 dealing with the effect of the adoption of the "Commission Form of Government" by referendum

in cities of 20,000 to 50,000 population. The pertinent sections are as follows:

Sec. 47-552—"Immediately after the adoption of such form of government, the mayor shall forthwith file with the Secretary of State a certificate stating that fact. Such certificate shall be recorded in the office of the Secretary of State and shall be a sufficient record and notice that such city is thereafter operating under such form of government."

Sec. 47-553—"The mayor and council and other officers in office at the time of the adoption of such form of government shall continue and remain until their successors shall be elected and shall qualify as herein provided, and all ordinances, resolutions or other provisions, therefore of force and not inconsistent with the provisions of this article, shall remain until altered or repealed by the council elected as herein provided."

Sec. 47-556—"Immediately after the filing of such certificate in the office of the Secretary of State, *the mayor shall,* by proclamation published continuously in the daily newspapers of such city up to the day of election, *order a special election for a mayor and four councilmen, such election to be held not earlier than one month and not later than six weeks after the issuing of such proclamation.* At such election the mayor and four councilmen shall be voted for at large." (Emphasis supplied.)

The writer considers it to be of great significance that Chapter 7 contains no comparable requirement for the holding of a new election for mayor and council. He thinks it is likewise of significance that the Prior Council by its resolution setting the new election for May 7, 1974, and the argument of Intervenor's Counsel would seem to recognize that the incumbent mayor and four councilmen would be the *de jure* government of Myrtle Beach until the beginning of the new fiscal year on July 1, 1974, despite the fact that the municipal government changed from "Commission

256 

Form" to "Council-Manager Form" thirty days after the referendum of November 6, 1973.

Moreover, assuming that the Intervenor correctly ██ interprets Chapter 7, the Uniform Muncipal Elections Law, cited above, has superseded inferentially contrary provisions of Chapter 7, if any. Chapter 7 was enacted by the Legislature in 1955 while the Uniform Municipal Elections Law was enacted by the Legislature in 1970. If Chapter 7 is inconsistent therewith, then "the last act if the Legislature is the law, and has the effect of repealing all prior inconsistent laws." *Ward v. Cobb,* 204 S. C. 275, 28 S. E. (2d) 850. *Home Building and Loan Association v. Spartanburg,* 195 S. C. 353, 194 S. E. 143. The 1970 Act denominated a "uniform" act by the South Carolina Legislature, was adopted by the Myrtle Beach City Council prior to the general election on November 6, 1973, and governed that election.

The Uniform Act provides for a four year term for Mayor and staggered four year terms for Council. As a result of the general election, Mayor Hirsch, Councilmen Holland and Vereen were elected for four year terms. If, by inference, any provision of Chapter 7 could be construed as requiring a new election, it would be inconsistent with the precise provisions of the Uniform Act which, in language precise and unambiguous, set the election date and the term of office.

The Uniform Act has, however, shortened the terms of office of all incumbents by six months. This occurs because Chapter 7 has changed the City from a calender year to a fiscal year, ending June 30, and the Act requires elections for municipalities having fiscal years ending on June 30 to be held in May to take office at the beginning of the fiscal year. Although it is not material, this will have the effect of substantially complying with the initial term provision of Chapter 7, Sec. 47-699.22, because Mayor Hirsch will serve the first three fiscal years under the new form of government as will Councilmen Vereen and Holland.

A special election at this time is authorized by Chapter 7 because of the fact that two new council seats have been created which are now vacant. Section 47-699.26 requires a special election to fill a vacancy if the vacancy occurs more than 120 days prior to the next city general election. The next such election under the provisions of the Uniform Act will be in May of 1975 when the terms of Councilmen Cook and Farlow expire. Thus a special election to fill the two vacancies created by the adoption of the Council-Manager form of government must be called. One of these Councilmen should be elected for a term to end when his successor is elected in May, 1975 and thereafter qualifies and the other should be elected for a term to end when his successor is elected in May, 1977 and thereafter qualifies. It is not, however, necessary or proper to elect successors at this time for Mayor Hirsch or for Councilmen Cook, Farlow, Holland and Vereen.