20396

Donald L. INFINGER et al., Plaintiffs-Respondents, The Honorable James B. EDWARDS in his capacity as Governor of the State of South Carolina, Defendant-Respondent, James A. Stuckey, Individually, as a representative of all electors of Charleston County not signing the "Home Rule" petition, and all other persons similarly situated, and in his capacity as Chairman of Charleston County Council, Defendant-Appellant, Allen R. Carter in his capacity as Chairman of the Joint Legislative Delegation of Charleston County, Defendant-Respondent, Wheeler M. Tillman and Zilla Hinton, Individually and as representatives of a class of all electors of Charleston County who have signed the "Home Rule" petition, and all other persons similarly situate, Defendants-Appellants. Ruth A. DODDS, Individually as a candidate for Charleston County Council and Elector of Charleston County and as representative of all other candidates and electors similarly situate, Appellant, v. James A. STUCKEY, Jr., et al., Respondents.

(234 S. E. (2d) 214)

*James E. Gonzales, Esq.,* of North Charleston, *for Appellants, Tillman, et al.,*

*Gedney M. Howe, Jr., Esq.,* of Charleston, *for Respondent, Carter.*

*Messrs. Ben Scott Whaley* and *Leonard L. Long, Jr.,* of Charleston, *for Appellant, Stuckey,*

April 12, 1977.

Ness, Justice:

These two cases were consolidated at oral arguments for a single determination. Although both cases involve interpretations of the Home Rule Act,[1] the issues presented are otherwise diverse, dictating an independent treatment of each action.

## I. Infinger, et al. v. Edwards, et al.

This case arises out of the following stipulated facts. Late in 1975, petitions were first circulated calling for a referendum as to the method of election and form of government for Charleston County pursuant to the Home Rule Act. Section 14-3701(a), Code of Laws (1975 Cum. Supp.). Thereafter the Election Commission contingently set a referendum date, scheduled the requisite public hearings, and established a deadline of May 14, 1976, for receiving petitions. All parties agreed to the deadline due to the required public notices and hearings, and the necessary preliminary preparations attendant to any public election. The petitions were timely tendered. On May 31, 1976, it was discovered that there were insufficient valid signatures to constitute the statutory ten per cent of the electors.[2] Accordingly, the scheduled public meetings and referendum were canceled.

On June 9, 1976, additional petitions were submitted but they were not accepted by the Election Commission as the deadline had elapsed. On June 19, 1976, the Election Commission, apprised that the ten per cent required signatures had been verified, decided to institute an action to acquire court approval of a referendum beyond the July 1, 1976, deadline incorporated in the Home Rule Act.[3]

The trial court granted an extension of the deadline for the referendum and tentatively set July 20, 1976, as the date

---

[1] Act No. 283 (1975).

[2] This finding by the Board of Voter Registration as agent of the Election Commission was not appealed.

[3] Section 14-3701(a), Code of Laws (1975 Cum. Supp.)

for the initial election. That order was superseded by this Court on July 1, 1976.

The parties concede that the sole issue raised by this suit is the propriety of the trial court's extension of the July 1, 1976 deadline.[4] We find the trial court was in error and reverse.

The Home Rule Act provides in part:

"Each county, after at least two public hearings which shall have been advertised in a newspaper of general circulation in the county and wherein the alternate forms of government provided for in this chapter are explained by the legislative delegation of the county, *may prior to July 1, 1976 conduct a referendum* to determine the wishes of the qualified electors as to the form of government to be selected *or become subject to the provisions of subsection (b) of this section.* The referendum may be called by an act of the General Assembly, resolution of the governing body, or upon petition of not less than ten percent of the registered electors of the county . . .

"Notwithstanding any other provisions of this chapter, *unless otherwise determined by referendum prior to July 1, 1976,* the county concerned *shall, beginning on that date,* have the form of government . . . most nearly corresponding to the form in effect in the county immediately prior to that date . . .

"After the initial form, number and composition has been adopted and selected, the adopted form, number and composition *shall not be changed for a period of two years from the date such form becomes effective* and then only as a result

---

[4] Although exception was taken to the trial court's failure to require the referendum to be held on June 30, 1976, this alleged error was not specifically argued in the briefs under an appropriately stated question and is deemed abandoned on appeal. *Richland County v. Palmetto Cablevision,* 261 S. C. 222, 199 S. E. (2d) 168 (1973). The trial court also properly observed that it was highly questionable whether compliance with the statutory pre-requisites to the referendum could be accomplished in one week.

of a referendum as hereinafter provided for . . ." § 14-3701, Code of Laws (1975 Cum. Supp.) (Emphasis added).

There is no constitutional right to a referendum to select a form of county government; the legislative authorization of such a right renders it purely statutory. *Duncan v. York,* S. C., 228 S. E. (2d) 92 (1976). The statutory right to a referendum was clearly circumscribed by the time allowed to exercise the right. Not only did the legislature contemplate and specifically provide for the contingency of counties not selecting a form of government, it further specified that the initial form could not be changed for a period of two years after its inception.

"When as here, the statute is plain and unambiguous, it becomes the duty of the court to apply it literally because the legislative design is unmistakable. *Martin v. Ellisor,* 266 S. C. 377, 381, 223 S. E. (2d) 415, 417 (1976)." *Henderson v. Evans,* S. Ct., 232 S. E. (2d) 331 (Smith's 1977). The right to a referendum expressly existed only if exercised prior to July 1, 1976. The deadline was thus mandatory and jurisdictionally prohibited a judicial extension by the lower court.

## II. *Dodds, et al. v. Stuckey, et al.*

The second case challenges the residency requirements of the at large elections for Charleston County Council as repugnant to the Home Rule Act. The lower court upheld the district residency provisions and we affirm.

Appellant Dodds, a resident of an unincorporated area outside the City of Charleston, sought to file for election to County Council in the Republican Primary for a seat held by resident of the City of Charleston.[5] Her application was denied by the Republican Election Commission as she was not a resident of the geographical area designated for that seat. The only issue preserved in this appeal by her single

---

[5] The primary elections were held on June 8, 1976, and the primary victors vied for the County Council seats in the November 1976 general election.

exception is whether the Home Rule Act abrogated district residency requirements.[6]

By Act No. 94, 1969 (§ 14-1162, Code of Laws) Charleston County was divided into four districts for residency purposes attendant to at large elections. The Home Rule Act provides:

"Notwithstanding any other provisions of this chapter, unless otherwise determined by referendum prior to July 1, 1976, the county concerned shall, beginning on that date, have the form of government including the method of election, number, composition and terms of the governing body most nearly corresponding to the form in effect in the county immediately prior to that date, which the General Assembly hereby determines to be as follows:

"For the counties of . . . Charleston . . . the council-administrator form of government as prescribed in article 4 of this chapter." § 14-3701(b), Code of Laws (1975 Cum. Supp.).

It is conceded that had the county opted to select its form of government pursuant to the procedure provided in the Home Rule Act, only two alternatives would have been available in regard to the method of election: single member districts or pure at large elections. Absent other legislative directives, the intent and design of the enactment would necessitate judicial interpretation. However, again the legislative design is unmistakable dictating literal application. *Henderson v. Evans, supra.*

Section 14-3701(b), as quoted above, specifically provides that in the absence of a referendum the county is to maintain the form of government "most nearly corresponding" to that form in effect prior to July 1, 1976. Form of government is

---

[6] Appellant argues that Article VIII, Section 7 of the South Carolina Constitution (as amended in 1973) also abolishes district residency requirements but her single exception does not encompass this question. In any event, it is conceded that Article VIII, Section 7 is prospective in application and would not apply to Act No. 94 enacted in 1969. *Neel v. Shealy,* 261 S. C. 266, 199 S. E. (2d) 542 (1973).

statutorily defined to include the "method of election, number, composition and terms of the governing body." Unquestionably, Act No. 94 (1969) was effective prior to July 1, 1976, and it prescribed at large elections with district residency requirements. As the trial court correctly observed, there can be no manifestation of "correspondence" closer than absolute identity.

Appellant asserts that the approval of district residency requirement will perpetuate prior structured forms of local governments and emasculate uniformity. A similar argument was advanced in *Duncan v. York, supra,* wherein we resolved that a transition period is necessary to realize an orderly implementation of reform. The initial form of government may be changed by referendum after two years and subsequent electoral review may be had four years after a referendum. § 14-3701 (c), Code of Laws, (1975 Cum. Supp.). A certain degree of stability must be guaranteed at all levels of governments lest we condemn them prior to their trials.

The uniformity contemplated by the Home Rule Act is the realization of complete local autonomy. It is not the desire to stereotype local governing bodies. "Home Rule" implies a certain degree of flexibility and individuality as indicated by the legislative scheme to provide four [7] alternative forms of local government. District residency requirements in no way ameliorate the intended uniformity of the Home Rule Act.

We, therefore, reverse the judgment of the lower court in *Infinger, et al. v. Edwards, et al.* and affirm the lower court in *Dodds, et al. v. Stuckey, et al.*

Reversed in part; affirmed in part.

LITTLEJOHN and RHODES, JJ., concur.

LEWIS, C. J., and GREGORY, J., concur in the result.

---

[7] The fifth form was held constitutionally impermissible in *Duncan v. York, supra.*