22034

The CITY OF MYRTLE BEACH; The City of North Myrtle Beach; The City of Surfside; as bodies politic and representing a class of citizens and taxpayers of Horry County, South Carolina, Appellants, v. Julian RICHARDSON, Bob Childs, Dick Elliott, Lacy Hucks, W. G. Hucks, Jr., Jimmy Johnson, Ernest Johnson, Jr., Arthur Marlow, and Braxton Watson, as Members of Horry County Council, Respondents.

Cheffo JOLLY, W. Daily Strickland, Harold R. Elvington, Carl Elliott, James E. Hayes, Robert B. Battle, A. L. Causey, Rafe Grainger, Arthur Hayes, W. E. Grantham, Eugene Strickland, Ollie Strickland, Ellis Hammond, Edward F. Hammond, Gene A. Hammond, Anderson Hammond, taxpayers of Horry County, South Carolina, Appellants, v. Julian RICHARDSON, Bob Childs, Dick Elliott, Lacy Hucks, W. G. Hucks, Jr., Jimmy Johnson, Ernest Johnson, Jr., Arthur Marlow, and Braxton Watson, as Members of Horry County Council, Respondents.

(311 S. E. (2d) 922)

Supreme Court of South Carolina.

*James B. Van Osdell,* of *Van Osdell, Lester, Stewart & McCutchen,* Myrtle Beach, *for appellants.*

*John P. Henry,* of *Thompson, Henry & Lovelace,* Conway, *for respondents.*

Jan. 19, 1984.

LEWIS, Chief Justice:

In March 1979, Horry County Council adopted a resolution establishing a fire protection system under the terms of Sections 4-19-10 and 4-19-20, Code of Laws of South Carolina, 1976 (originally adopted as 1974 Act No. 1167, effective July 9, 1974). Thereafter, two actions were commenced to contest the validity of this Act. The first case was brought by the cities of Myrtle Beach, North Myrtle Beach and Surfside as plaintiffs, and the second by a number of taxpayers. The actions were consolidated for trial, resulting in a judgment upholding the statute in question and the validity of the actions of County Council in creating the fire protection district. The cities and the taxpayers have appealed.

At the outset, the challenge to the standing of the cities to maintain their action was overruled by the trial court. We reverse this determination, concluding that their suit should have been dismissed. The issue here concerns the creation of a fire protection district to secure citizens outside the limits of the cities. Under no circumstances could the cities have a governmental right to interfere with the creation of such districts. The action by the cities is accordingly dismissed, leaving for determination those issues arising under the action by the taxpayers.

This appeal turns upon a single question: was 1974 Act 1167 repealed by implication through the subsequent adoption of 1975 Act 283, popularly known as the Home Rule Act and codified as Sections 4-9-10, *et seq.*, Code? The trial court correctly approached this issue by noting that implied repeal of statutes is not favored and any reasonable construction will be adopted to avoid such a result.

In construing the two statutes, however, the trial court overlooked a fundamental conflict, which precludes any reconciliation of their provisions. We find a clear repugnancy between these two enactments, and thus we cannot escape a repeal by implication. In our view, this conclusion is reached directly from comparison of the statutes in their express terms, making it unnecessary to determine whether or not the Home Rule Act is a general or comprehensive scheme impliedly intended to override previous similar enactments.

Act 1167 authorizes the governing body of each county to establish fire protection systems for areas within the county not offered such service by existing special purpose districts or municipalities. There is a substantial dispute in this record as to the existence and nature of fire protection service already offered by the plaintiff cities to the areas encompassed by the 1979 Horry County plan. In resolving this appeal, we do not express any view of these factual issues.

Act 1167 clearly grants all authority in this matter to the governing body of the given county. The power to designate "service areas" is set forth in Section 2(b) of the Act, Section 4-19-10(b), Code, and is subject only to procedural limitations imposed by Section 2-A of the Act, Section 4-19-20, Code, which we quote in full —

Prior to the imposition of ad valorem taxes upon any service area, the governing body shall have complied with the following requirements of this section.

(1) The governing body shall, by resolution duly adopted, order a public hearing to be held for the purpose of making a determination as to the area to be included in the service area to be taxed.

(2) Notice of the foregoing action shall be published once a week for three successive weeks in a newspaper of general circulation in the county, and such notice shall state:

(i) The time of the public hearing, which shall be not less than sixteen days following the first publication of the notice;

(ii) The place of the hearing; and

(iii) The area included in the service area to be taxed, including a brief description of the boundary lines.

(3) Such hearing shall be conducted publicly and both proponents and opponents of the proposed action shall be given full opportunity to be heard.

(4) Following the hearing the governing body shall, by resolution, make a finding as to whether the service area shall be established as a taxing district.

(5) The governing body shall thereupon cause notice of its action to be published once a week for two successive weeks in a newspaper of general circulation within the county which shall state the results of its action.

(6) Any person affected by the action of the governing body may, by action *de novo* instituted in the court of common pleas for such county, within twenty days following the last publication of the notice prescribed by paragraph (5) above, but not afterwards, challenge the action of the governing body.

The record reveals that Horry County Council did comply with the requirements of Section 4-19-20, Code. Subsequent to a public hearing the County Council did by resolution find that the service area would be "established as a taxing district" as directed by Section 4-19-20(4), Code. In describing

the new service area, the resolution interchangeably employs the terms "taxing district" and "special district."

Were it not for the provisions of 1975 Act 283, one could hardly sympathize with any complaint in this case. Particularly would this be so in light of Section 4-19-20(6), Code, which bars challenge to the action of the governing body made more than twenty days after the last publication of the resolution. In this instance, the plaintiffs had until the latter part of April 1979, to bring their actions. The suit by the plaintiff cities was not commenced until February 1980, and that of the taxpayers until May 1980. The trial court determined that the actions were barred under § 4-19-20(6), Code, a holding premised upon his rejection of the plaintiff's argument that 1974 Act 1167 had been repealed.

This Court has said many things about the scope of the Home Rule Act, not always speaking with a single voice, to be sure. See *Infinger v. Edwards*, 268 S. C. 375, 234 S. E. (2d) 214; *Torgerson v. Craver*, 267 S. C. 558, 230 S. E. (2d) 228; *Duncan v. County of York*, 267 S. E. 327, 228 S. E. (2d) 92. There can be no disagreement, however, as to the plain meaning of the following emphasized excerpt from the fifth enabling clause of Section 2 of the Act, codified as Section 4-9-30(5), Code, by its terms, each county government is empowered:

> *to assess property and levy ad valorem property taxes and uniform service charges,* including the power to tax different areas at different rates related to the nature and level of governmental services provided and make appropriations *for functions and operations of the county, including,* but not limited to, appropriations for general public works, including roads, drainage, and other public works; water treatment and distribution; sewage collection and treatment; courts and criminal justice administration; correctional institutions; public health; social services; transportation; planning; economic development; recreation; public safety, including police and *fire protection,* disaster preparedness, regulatory code enforcement; hospital and medical care; sanitation, including solid waste collection and disposal; elections; libraries; and to provide for the regulation and enforcement of the above; provided, however, that prior

to the creation of any special tax district for the purposes enumerated herein, one of the following procedures shall be required:

(a) *An election, initiated by* a petition of the majority of the *freeholders in the proposed tax district,* shall be held in which *a majority* of the electors in that area *must approve the creation of the special tax district,* the nature of the services to be rendered and the level of taxes to be levied; or

(b) When fifteen percent of the *freeholders in a proposed special tax district sign a petition* requesting the creation of such a district, a referendum and election shall be held. Separate boxes shall be maintained to receive the votes of the freeholders voting in the referendum and those of the electors voting in the election. *A majority of electors and a majority of the freeholders in the proposed special tax district must approve* the creation of that district, the nature of the services to be rendered and the level of the taxes to be levied; or

(c) When a *petition is submitted* to the county governing body *signed by seventy-five percent or more of the freeholders* owing at least seventy-five percent of the assessed valuation of real property *in the proposed special tax district.* The petition shall contain a designation of the boundaries of the proposed special tax district, the nature of the services to be rendered and the level of the taxes to be levied.

After one of the above procedures has been completed and the result is favorable for creation of a special tax district, such district shall be created by council ordinance. . . .

There is no avoiding the conclusion that after the adoption of the Home Rule Act the creation of *any* special tax district became a matter of free holder initiative. The procedure provided by 1974 Act 1167, whereby such power resides exclusively in the county governing body, is wholly at odds with the plain and direct language just quoted from 1975 Act 283. Not only has the initiative for fire protection districts been

passed from the hands of a county government, but the power to approve designated boundaries, specified services and levels of taxation now rests with freeholders and/or electors. Under the terms of 1974 Act 1167, such power resided solely in the county governing body. *See* Section 4-19-10(j) and (*l*), Code.

In light of the complete repugnancy between these two enactments, we are compelled to find that 1975 Act 283 repealed by implication the grant of power to county governing bodies contained in 1974 Act 1167, *in the interest of Shaw*, 274 S. C. 534, 539, 265 S. E. (2d) 522; *Garey v. City of Myrtle Beach*, 263 S. C. 247, 256, 209 S. E. (2d) 893; *City of Spartanburg v. Blalock*, 223 S. C. 252, 262-263; 75 S. E. (2d) 361; *McCollum v. Snipes*, 213 S. C. 254, 268, 49 S. E. (2d) 12; *State v. Hood*, 181 S. C. 488, 491, 188 S. E. 134; *S. C. Tax Commission v. Brown*, 154 S. C. 55, 62, 151 S. E. 218 (and cases cited).

The Home Rule Act contains no general savings clause nor is this Court guided by any general saving statute, such as exists in a number of jurisdictions. Sutherland on Statutory Construction (4th Edition) Section 23.33 and 23.37. This Court is left to determine the operation and effect of the implied repeal here found to have occurred, although we are not utterly without the benefit of settled rules. Vested rights, for example, are not destroyed by repeal of a statute. *South Carolina Mental Health Commission v. May*, 226 S. C. 108, 115-116, 83 S. E. (2d) 713. It has been soundly stated that, "in cases of alleged repeals by implication, the consequences of such repeal may be taken into consideration." 73 Am. Jur. (2d) Statutes Section 400, P. 513. Equally useful in the present context is the view that, "Even where no question of vested rights is involved, the presumption is that repeal of a statute does not invalidate the accrued results of its operative tenure . . ." 82 C. J. S. Statutes Section 435, p. 1011.

The record before us amply demonstrates "accrued results" in the form of expenditures and contractual obligations on the part of Horry County. This Court is not blind to the equities in this matter, particularly since the plaintiffs have sought a Declaratory Judgment and injunctive relief. Justice will be served in this instance by a finding that the Home Rule Act repealed by implication the provisions of

1974 Act 1167, a finding which shall be limited in its operation to the establishment of fire protection systems commenced after the filing of this opinion.

Accordingly, judgment is granted to the plaintiff taxpayers to the extent that 1974 Act 1167, codified as Sections 4-19-10, *et seq.*, Code, is held repealed by 1975 Act 283, Sections 4-9-10, *et seq.*, Code, as to actions of county governing bodies commenced after the filing of this opinion. All other relief is hereby denied. Suit by the plaintiff cities is dismissed.

LITTLEJOHN, NESS and HARWELL, JJ., and JOSEPH R. MOSS, Acting Associate Justice, concur.