23213

CITY OF DARLINGTON, City of Hartsville, J. Ronald Ward, Cecil Chandler, Pat Howle, Earl Johnson, James Hammons, Roseann W. Harry, Oby G. Lyles, Jr., L.M. Cannarella, T. James Bell, Jr., Pam P. Carrol, William A. Gaskins, Franklin Hines, Mary F. Jordan, T.B. Thomas, Tom Stewart, Marion "Bud" Gandy, Mrs. Guy Beatty, George Beckroge, Bishop Lenist Hunter, Beth Weaver, Mrs. Ann Osborne, Donald Sylvester, Bill Segars, Edward L. Melton, James T. Gainey, Marvin Odom, A.M. Odom, W.R. "Bill" Gunnells, William A. Bramlett, Jr., Jan Bramlett, Robert Hitch, Susan Hitch, Robert B. Moody, Barbara W. Moody, Don A. Parnell, Jack W. Price, Laurie G. Price, Respondents v. Robert L. KILGO, Jr., Jerrell Sansbury, Rosa Lee Gerald, Robert L. Bryant, Bobbie S. Gardner, Lucious T. Bacote, Richard Griggs, Maxie O. Redic, Jr., and Billy D. O'Neal, Appellants.

(393 S.E. (2d) 376)

Supreme Court

*Margaret C. Pope, Frank W. Cureton* and *Virginia L. Vroegop, Belton T. Zeigler, Sinkler and Boyd, P.A.,* Columbia, and *Karl H. Smith,* Hartsville, *for appellants.*

*Martin S. Driggers,* Hartsville, and *Paul A. Sansbury,* Darlington, *for respondents.*

*Roy D. Bates,* Columbia, *for amicus curiae Mun. Ass'n of S. C.*

Heard June 8, 1989.

Decided May 7, 1990.

FINNEY, Justice:

This is an appeal of a summary judgment order granting respondents, City of Darlington, City of Hartsville (Cities) and other individuals who live in or near the Cities an injunction against appellants, the Darlington County Administrator and members of the Darlington County Council (County). We affirm.

Darlington County Council passed an ordinance creating a fire district which included all unincorporated areas of Darlington County. The County did not seek an agreement with the Cities prior to adopting this plan. The respondent Cities sued to enjoin implementation of the plan as a violation of S.C. Code § 4-19-10 (1976) because the County's proposed service area includes areas for which the Cities provided fire protection. The Cities moved for summary judgment. The trial court enjoined appellants from creating a fire district which included property within five miles of the Cities' boundaries unless and until the parties executed an agreement. This appeal followed.

In addition to furnishing full fire protection service within their corporate limits, the Cities also contract to provide limited service within a five-mile radius outside their municipal boundaries. Service to these outlying areas is confined to structures under contract or life-threatening fires. The record reflects that the Cities respond to fire calls for non-contract structures, at which time the owner generally agrees to pay the fee.

First, appellants contend § 4-19-10 does not restrict its ability to create a county-wide fire district without an agreement because the Cities' limited fire protection does not qualify the five-mile radius as a "service area" as contemplated by the statute.[1] The County Fire Protection Services Act, Section 4-19-10, provides:

Powers of governing body generally.
The governing body of each county has the following powers:
(a) To establish, operate, and maintain a system of fire protection.

---

[1] Appellants assert that fire protection is available within the five-mile radius only upon payment of a fee, that such coverage is provided only for structures, and that less than one-third of the property owners are covered by contract.

(b) To designate, subject to the provisions of § 4-19-20, the areas of the county where fire protection service may be furnished by the county under the provisions of this chapter (referred to in this chapter as service areas); *provided, however,* that these *service areas shall exclude* those *areas* where fire protection is *then being furnished* by some other political subdivision *unless an agreement be entered* into between the county and such other political subdivision *for the joint exercise of fire protection powers within the service area* of such political subdivision and the sharing of the costs thereof.

. . . (Emphasis added.)

In its findings preceding reenactment of the County Fire Protection Services Act in 1984, the South Carolina legislature made clear its intent by stating that "[t]he General Assembly has determined to reenact this legislation under which counties may provide fire protection services within the unincorporated areas of such counties *where no fire protection services are presently offered by any* existing special purpose district or *municipality* . . ." Act No. 408, 1984 S.C. Act 1818. (Emphasis added.) As noted in § 5-7-60, municipalities may only provide service outside their corporate limits by contract.

The trial court concluded that legislative intent was to allow municipalities to continue to offer fire protection service in areas previously served under contract, and that such areas could not be included in any county district plan without prior agreement with the municipality. We agree. It is our view that S.C. Code § 4-19-10(b) protects the rights of cities and customers who have contracted for fire protection under § 5-7-60 and that, in the absence of an agreement, newly created county fire districts must exclude areas served by cities under contract. Since the legislature did not qualify the nature or extent of the "fire protection services . . . offered," this Court is constrained to hold that the five-mile radius protected by the Cities under contract constitutes a "service area."

Second, appellants assert that S.C. Code Ann. § 5-7-60 prohibits Cities from providing fire protection service to unincorporated areas after the County undertakes

service in such areas. Appellants recite language from *City of Myrtle Beach*[2] that "under no circumstances could the cities have a governmental right to interfere with the creation of such [county created fire] districts." *City of Myrtle Beach v. Richardson*, 280 S.C. 167, 169, 311 S.E. (2d) 922, 923 (1984). In the instant case, respondents do not challenge appellant's right to "create" a fire district; they contend that such a district may not include areas presently served by the Cities.[3]

Under S.C. Code Ann. § 5-7-60 (1976), South Carolina cities may contract with any individual, corporation, state or political subdivision or agency to furnish fire protection outside the cities' corporate limits.[4] Thus, the question is whether there is a conflict between the County Fire Protection Services Act, § 4-19-10(b), and the Cities' statutory rights under § 5-7-60. This Court finds no conflict between § 4-19-10 and § 5-7-60.

The 1984 County Fire Protection Services Act authorized the creation of such districts and established criteria which must be met for the institution of county fire districts. It is only when an existing municipal service area within the county is affected that an agreement for the joint exercise of fire protection powers must be entered into prior to the creation of a county fire protection district. This provision does not embody veto power, but allows both entities to furnish service with a determination of how the costs thereof shall be

---

[2]In *City of Myrtle Beach, supra,* this Court held in 1984 that the County Fire Protection Services Act of 1974 was repugnant to the 1975 Home Rule Act. We reasoned that because the 1975 Home Rule Act required freeholder initiative as a precondition of all special taxing districts, including fire protection districts, and the 1974 County Fire Protection Services Act did not require freeholder initiative, the former act was impliedly repealed by the latter. However, later in 1984, the General Assembly reenacted the 1974 County Fire Protection Services Act without change, thereby limiting the precedential value of the decision in *City of Myrtle Beach.*

[3]The statutory mandate for an agreement between counties and municipalities provides for a resolution of such disputes with a view to providing uniform comprehensive fire protection to all residents in accordance with the spirit of the statute.

[4]Section 5-7-60 of the Code of Laws of South Carolina (1976) provides in pertinent part: Any municipality *may* perform any of its functions, furnish any of its services, except services of police officers, and make charges therefor and may participate in the financing thereof in areas outside the corporate limits of such municipality *by contract* with any individual, corporation, state or political subdivision or agency thereof or with the United States Government or agency thereof . . . [emphasis added].

shared.

It is this Court's conclusion that the legislature balanced the county residents' interest in having full fire protection with the municipalities' interest in continuing service it has been providing by requiring an agreement between the two when the county proposes to institute county-wide protection. For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GREGORY, C.J., and TOAL, J., concur.

HARWELL, J., and GOOLSBY, Acting Associate Justice, dissenting in separate opinion.

GOOLSBY, Acting Associate Justice, dissenting:

I respectfully dissent.

The respondents City of Darlington, City of Hartsville, and several individuals living either in or near these municipalities brought this action against the Darlington County Administrator and the members of the Darlington County Council to enjoin them from implementing an ordinance that created sometime prior to May 11, 1987, in all unincorporated areas of Darlington County, with the exception of two areas protected by rural fire districts, a fire protection district, called the Darlington County Fire Protection District. The new district embraces unincorporated areas in which Darlington and Hartsville, according to the Statement, "offered fire protection services" pursuant to contracts. The Circuit Court granted summary judgment to Darlington, Hartsville, and the other respondents and enjoined the County Administrator and the County Council from creating a fire protection district in Darlington County within the "service area[s]" of Darlington and Hartsville, absent agreements between the county and each of the two cities permitting the county to furnish fire protection services in the disputed areas. The County Administrator and the County Council appeal.

Section 5-7-60 of the Code of Laws of South Carolina

(1976),[1] authorizes, but does not obligate, any municipality in this State to provide its services, except police protection services, by contract to individuals in all areas outside its corporate limits except those designated service areas of another municipality or political subdivision. Acting pursuant to Section 5-7-60, Darlington and Hartsville contracted with various persons to furnish fire protection services in areas outside their municipal limits. These areas are now included in the new fire protection district.

The fire protection services provided by both municipalities in these areas, however, are far from comprehensive. Each municipality offers fire protection services to property outside its municipal limits only where the property lies within five road miles of its fire station; however, each municipality serves only those owners or tenants of property in the area who contract with it and pay it an annual fee. Both municipalities also charge an additional fee when they respond beyond their corporate limits to a fire involving a structure under contract.

Neither Darlington nor Hartsville will respond beyond its corporate limits to either wildfires or automobile fires unless they threaten either structures then under contract or lives. The record does not indicate that either municipality provides contractual fire protection services to persons who either cannot afford the required fee or who neglect to pay it.[2]

Regarding Hartsville in particular, only one-third of the

---

[1]Section 5-7-60 provides in part: Any municipality may . . . furnish any of its services . . . in areas outside [its] corporate limits . . . by contract with any individual, corporation, state or political subdivision . . ., except within a designated service area . . . of another municipality or political subdivision. . . . For the purposes of this section designated service area shall mean an area in which the particular service is being provided or is budgeted or funds have been applied for as certified by the governing body thereof . . . .

[2]I do not agree with the majority that "[t]he record reflects that the *Cities* respond to fire calls for noncontract structures, at which time the owner generally agrees to pay the fee." [Emphasis mine.]

Cecil Earl Ward, Darlington's city administrator, described Darlington's policy regarding calls originating outside the city limits by stating that "[a] person has to be a member of a Suburban Rural Fire Protection [sic] before the City Fire Department will respond." When asked whether Darlington's fire department would respond outside the city limits to a fire involving a structure not under contract in a situation that was not life-threatening,

structures within the unincorporated area five road miles from its fire station receive fire protection services. In addition, the contract Hartsville has with subscribers covering property outside its corporate limits expressly reserves to Hartsville the right to respond to a call involving such property "only when the call will not jeopardize fire protection to property or persons within the City limits."

The County Council acted pursuant to Section 4-19-10 of the Code,[3] when it established the new fire protection district. Before establishing the district, the county made no attempt to obtain agreements from Darlington and Hartsville to provide fire protection services in the unincorporated areas in which the latter were then furnishing such services pursuant to contracts.

In granting summary judgment to the respondents and enjoining the County Administrator and County Council, the Circuit Court viewed as "[t]he critical question" the question of whether the areas "wherein [Darlington and Hartsville]

---

Ward replied, "If they are a member of a Suburban Rural Fire Protection [sic], the Fire Department will respond. If they are not, we would not respond."

James Roland Ward, Darlington's mayor, was asked if Darlington's fire department would respond to any life-threatening situation regardless of membership. He said, "Yes, I'm sure [of] it—Well, no, I take that back. You said regardless of membership. If a call comes in and the person is not signed up on the sheet for fire coverage, then . . . the Fire Department . . . does not respond. If they did, then there would be no need to have the contract . . . ."

Louis Matthew Cannarella, Hartsville's mayor, testified that he "ha[d] heard of *occasions* where the Fire Department has responded, got to a resident that was not a member . . . the resident was there, agreed to pay whatever the fee was, and they went ahead and fought the fire." [Emphasis mine].

[3]Section 2 of Act No. 408 of 1984 expressly reenacted Chapter 19 of Title 4 of the South Carolina Code of Laws (1976). 63 STAT. 1818 at 1819 (1984). The reenacted Chapter includes Section 4-19-10 which prescribes the powers of county governing bodies regarding fire protection systems. Section 4-19-10 provides in part:

The governing body of each county has the following powers:

(a) To establish, operate and maintain a system of fire protection.

(b) To designate, subject to the provisions of § 4-19-20, the areas of the county where fire protection service may be *furnished* by the county under the provisions of this chapter (referred to in this chapter as service areas); provided, however, that these service areas shall exclude those areas where fire protection is *then* being *furnished* by some other political subdivision unless an agreement be entered into between the county and such other political subdivision for the joint exercise of fire protection powers within the service area of such political subdivision and the sharing of the costs thereof. (Emphasis added.)

*offer* fire protection services under contract" are areas where fire protection is then being furnished by a political subdivision within the meaning of Section 4-19-10(b). [Emphasis mine.] It concluded that they are so and held that "such areas could not be included in any county fire district plan without a prior agreement with the municipality." This holding, which the majority affirms, is clearly erroneous.

Where the language of a statute is unambiguous, the language must be accorded its clear meaning. *Helfrich v. Brasington Sand & Gravel Co.*, 268 S.C. 236, 233 S.E. (2d) 291 (1977). Courts are not free to add words to a statute when interpreting it and they may not enlarge upon a statute's legislative design by giving the words used in the statute too broad a meaning. *Harling v. Board of Comm'rs of Police Insurance and Annuity Fund*, 205 S.C. 319, 31 S.E. (2d) 913 (1944); *Mills v. Southern Railway Co.*, 82 S.C. 242, 64 S.E. 238 (1909).

Here, the majority, as did the Circuit Court, has read into Section 4-19-10(b) something that the General Assembly did not itself put therein and it has altered the statute's legislative design by giving to municipalities what amounts to a veto over a county's authority to create fire protection districts in areas where fire protection is not then being furnished but is merely then being offered.

Section 4-19-10(b) allows a county to establish fire protection systems and to designate the areas of the county where the county may furnish fire protection services. These service areas, however, must "exclude those areas where fire protection is *then being furnished* by some other political subdivision . . . ." The statute does not require the exclusion of those areas where fire protection is "then being offered."[4]

---

[4]The words "furnish" and "offer" are not synonymous. *See* ROGET'S II: THE NEW THESAURUS at 409 and 647 (1980); W. BURTON, LEGAL THESAURUS at 238 and 355 (1980); J. RODALE, SYNONYM FINDER at 445 and 803 (1978) (reference books listing synonyms for the words "furnish" and "offer"); *see also* WEBSTERS: NEW UNIVERSAL UNABRIDGED DICTIONARY at 743 and 1242 (2d ed. 1983) (dictionary defining the words "furnish" and "offer" and listing their synonyms).

The majority incorrectly discerns the General Assembly's intent regarding Section 4-19-10(b) not from the language thereof but from the preamble to the act reenacting the chapter in the South Carolina Code of Laws that contains Section 4-19-10(b). *See* 63 STAT. 1818-19 (1984). The preamble uses the word "offered" while Section 4-19-10(b) uses the word "furnished." A

Thus, the only unincorporated areas excluded from the service area of the new fire protection district when it was established were those individual "areas outside the corporate limits" then under contract with either Darlington or Hartsville to receive fire protection services. These areas were the only unincorporated areas where fire protection services were "then being furnished by some other political subdivision" and, therefore, were the only unincorporated areas, other than the two rural fire districts, regarding which the county had to obtain agreements from the municipalities before it could provide immediate fire protection services thereto.

Section 5-7-60 must, if possible, be harmonized with Section 4-19-10 so as to avoid any conflict. *See Privette v. Grinnell*, 191 S.C. 376, 4 S.E. (2d) 305 (1939) (statutes should be construed together so that both may be given effect); 82 C.J.S. *Statutes* § 291(c) at 496 (1953) (two seemingly repugnant acts should be harmonized so as to permit both to be operative and effective, if possible). This can be easily accomplished and in such a way as to allow the county to provide fire protection services in the new fire protection district without impairing then existing contracts between the municipalities and their nonresident subscribers.

Contracts with Hartsville, as indicated above, are on a year-to-year basis. The record suggests that the Darlington contracts are for a like term. When the county established a service area within the unincorporated areas where Darlington and Hartsville then "offered" fire protection services, the new fire protection district became obligated to "furnish" fire protection services to those individuals, corporations, and agencies who were not "then being furnished" such services by either Darlington or Hartsville pursuant to contract. Nothing whatever in Section 4-19-10 required the county to

---

court may resort to a statute's preamble to aid in the construction of the body of the statute, but it may not do so where, as here, the statute's language is plain and unambiguous. 73 Am. Jur. (2d) *Statutes* § 92 at 319 (1974); 82 C.J.S. *Statutes* § 349 at 730-31 (1953); *see Coosaw Min. Co. v. South Carolina ex rel. Tillman*, 144 U.S. 550, 12 S. Ct. 689, 36 L. Ed. 537 (1892) (express provisions in the body of an act cannot be controlled by the preamble and the preamble may be referred to when ascertaining the meaning of a statute where the statute is susceptible of different constructions).

obtain an agreement from the municipalities to provide fire protection services to those outside their corporate limits who had no contract with either municipality for such services and nothing in the statute gave to the municipalities the power to veto the county's right to furnish fire protection services to non-resident nonsubscribers.

The new fire protection district, however, must furnish fire protection services to nonresident subscribers once their fire service contracts with either Darlington or Hartsville have terminated. This is because once their fire service contracts have ended they cannot be renewed since Section 5-7-60 expressly precludes a municipality from furnishing services "within a designated service area . . . of another political subdivision." The new fire protection district is, by virtue of Section 4-19-10 and the action taken by the County Council pursuant thereto, the designated fire protection service area of the county. *See City of Myrtle Beach v. Richardson*, 280 S.C. 167, 169, 311 S.E. (2d) 922, 924 (1984) (Act No. 1167 of 1974, which Act. No. 408 of 1984 reenacted and which was then and is now Section 4-19-10 of the Code, "clearly grants all authority" to the county governing body to designate service areas).

The effect of the majority's opinion is to leave those who own or rent property in the unincorporated areas within five road miles of the fire stations in the Cities of Darlington and Hartsville without comprehensive fire protection services.

It also leaves those who reside in the unincorporated areas in question without any representative voice regarding the availability, cost, or quality of fire protection services. Indeed, the only rights a nonresident can have regarding fire protection services are those rights that he or she might acquire by contract; and if the municipality chooses, for whatever reason, not to contract with the nonresident, the nonresident will have no fire protection rights at all.

I, therefore, would reverse the Circuit Court's order and remand the case for further proceedings.

HARWELL, J., concurs.