Toal, Justice:
This appeal arises from the trial court’s order, in an action at law, tried before the judge in a tax protest suit. The trial court ordered that Carolina Power & Light’s H. B. Robinson Nuclear Power Plant was properly included within the Darlington County Fire Protection Service District, and that the County Treasurer was entitled to recover all taxes which had been paid under protest, together with interest, for the inclusive tax years of 1988 to 1991. We agree and AFFIRM.
Facts
On April 6, 1987, Darlington County created a fire protection district by ordinance pursuant to S.C. Code Ann. § 4-19-10 (1976). The district encompassed the county with the exception of the Cities of Darlington and Hartsville, and the Palmetto and South Darlington fire districts. The ordinance and creation of the district was challenged by the City of Darling-ton in an earlier suit, City of Darlington v. Kilgo, 302 S.C. 40, 393 S.E. (2d) 376 (1990). The trial judge in Kilgo enjoined the County of Darlington from including, in the new fire district, *7 those areas consisting of “the five mile radius service area” around the Cities of Hartsville or Darlington.
The defendants in Kilgo moved under Rule 60(a), SCRCP, for a clarification of the Order to define “five mile radius” as five road miles from the existing fire stations. In the Rule 60 (a) action, the appellant in the present case (hereinafter CP & L), moved to intervene to prevent the court from adopting the “five road miles” definition of “five mile radius.” This intervention had the effect of addressing whether CP & L’s H.B. Robinson Nuclear Power Plant (hereinafter Plant) would be physically included in Hartsville’s fire protection service area.[1]
In accordance with the trial court order which we affirmed in Kilgo, the County amended the fire district’s boundaries to comport with the five road miles definition of service area. On October 31,1988, the county provided by ordinance for the issuance of a bond anticipation note in the amount of one million, five hundred thousand dollars ($1,500,000), to purchase fire equipment. The procurement of new equipment included two new fire trucks and a complete upgrade of equipment and facilities at the Pine Ridge Fire Station which is located less than a mile from the CP & L Plant.
In 1989, CP & L commenced several actions challenging the inclusion of the Plant in the Darlington County Fire Protection District (hereinafter district) and seeking to recover taxes paid in protest to the county for the tax year of 1988. Darlington County raised the statute of limitations as a defense and the trial court granted a summary judgment which was appealed. In Carolina Power & Light Company v. Darlington County, 304 S.C. 525, 405 S.E. (2d) 823 (1991), we held that the statute of limitations which the county relied on was applicable to the creation of the district and not to a dispute concerning the boundaries established for the district. We focused on the narrow statute of limitations issue and reversed and remanded the summary judgment.
CP & L commenced other tax protest suits for the years 1989, 1990, and 1991 which were consolidated and heard by Judge James E. Lockemy during a non-jury term of court. It *8 is from Judge Lockemy’s Order dated August 1,1992, that CP & L appeals.
Law/Analysis
The Appellant raises a multitude of issues which center on the factual findings and conclusions of the trial judge concerning a fire service contract. These factual issues are all encompassed in the question of whether CP & L had a valid contract for fire protection service which would prevent the inclusion of CP & L in the new Darlington Fire Protection District under S.C. Code Ann. §§ 4-19-10 and 5-7-60 (1976). The remaining issue disputes the trial judge’s conclusion that CP & L’s inclusion in the fire district was not an unconstitutional “taking” of CP & L’s property.
Standard of Review:
An action for the recovery of ad valorem taxes paid under protest is an action at law. Elmwood Cemetery Association v. Wasson, 253 S.C. 76, 169 S.E. (2d) 148 (1969); Hibernian Society v. Thomas, 282 S.C. 465, 319 S.E. (2d) 339 (Ct. App. 1984). In an action at law tried without a jury, the trial judge’s findings of fact will not be disturbed on appeal unless the findings are found to be without the reasonable support of the evidence or based on some error or law. Shelly v. Shelly, 253 S.C. 238, 169 S.E. (2d) 764 (1969); see also Lloyd v. Walters, 276 S.C. 223, 277 S.E. (2d) 888 (1981). In American Mutual Fire Ins. Co. v. Reliance Ins. Co., 268 S.C. 310, 233 S.E. (2d) 114 (1977), we held that where a judge sits without a jury, the judge is a substitute for the jury, and his findings will be sustained if supported by any evidence.
Existence of a Contract:
In Kilgo, supra, we interpreted S.C. Code Ann. §§ 4-19-10 and 5-7-60 (1976) and held that:
[the] legislative intent [of §§ 4-19-10 and 5-7-60] was to allow municipalities to continue to offer fire protection service in areas previously served under contract, and that such areas could not be included in any county district plan without prior agreement with the municipality.
Id. at 43, 393 S.E. (2d) at 378 (emphasis added). We went on to say that:
*9 [i]t is only when an existing municipal service area within the county is affected that an agreement for the joint exercise of fire protection powers must be entered into prior to the creation of a county fire protection district.
Id. at 44, 393 S.E. (2d) at 379.
In Carolina Power & Light Co. v. Darlington County, supra, we viewed the case from an entirely different posture. On appeal from a summary judgment, we were forced to examine the scope of the applicable statute of limitations. The issue of the existence of a contract was not addressed except as an allegation made by CP & L.
The real question before us today is the existence of the contract. CP & L asserts that the trial judge erred in concluding that a specific type of contract was required to comport with the statutes. The judge concluded that the agreement between CP & L and the Hartsville Fire Department was not a valid contract, and therefore, not a contract as contemplated by §§ 4-19-10 and 5-7-60. The judge equated the alleged contract to a mutual aid agreement which was not a contract as contemplated by the statutes. Further, the judge found that the Hartsville Fire Chief lacked capacity to enter into this type of contract on behalf of the city.
The statutes as interpreted in Kilgo, supra, clearly require a valid contract with the city to avoid inclusion in the county fire district. As we stated in Kilgo, the legislative intent of the statutes is to allow counties to establish taxing districts for fire protection services without invading the province of another political subdivision or fire district. By necessity, it is required that a contract be in existence to prevent an encroachment by a county fire district when boundaries are established. The use of some public authorization or ordinance by the appropriate municipal government is critical to put a county on notice, and to insure that there is no inclusion of an area already receiving fire service.
CP & L concentrates on valid consideration to support the contract, yet the real problems stem from the capacity or authority of the person signing the agreement. In 56 Am. Jur. (2d), Municipal Corporations, § 504 at 556 (1971), it states that:
[a] municipal corporation is not bound by a contract made *10 in its name by one of its officers or by a person in its employ, although within the scope of its corporate powers, if the officer or employee had no authority to enter into such a contract in behalf of the corporation.

Id.

The relevant evidence in the record establishes that CP & L’s payments to the Hartsville Fire Department are determined by an internal CP & L guideline, and not by a fee schedule set up between CP & L and the fire department. Further, there is no agreement between CP & L and the Hartsville Fire Department concerning the timing or the amount of the annual payment made by CP & L. The Pine Ridge Volunteer Fire Department produced receipts and testified that, until 1987, Pine Ridge received a similar payment of funds from CP & L, even though the Pine Ridge volunteer fire department was terminated from the Plant’s fire plan in 1984. CP & L’s expert witness was told, by representatives of CP & L, that the payments made to the Hartsville Fire Department were voluntary.
CP & L would characterize the difference in contracts as a Nuclear Regulatory Commission (NRC) requirement. This is of little aid since there was no showing that the NRC required the contract to be signed by any other party than the one normally authorized to bind the City, or that payments must be made directly to the fire department. The City of Hartsville’s standard fire protection contract requires both the Mayor’s signature, and payment of fees directly to the city. The Hartsville Fire Chief, paid directly by CP & L, used the money to fund social functions as well as buying fire equipment.
In City of North Charleston v. North Charleston Dist., 289 S.C. 438, 346 S.E. (2d) 712 (1986), this Court held that a person who contracts with a municipality is charged with the knowledge of its limitations and restrictions in making contracts. On the present facts, this rule put CP & L in a position to either insure that an ordinance or resolution existed, or at a minimum that a contract was made through the Mayor. Moreover, because there is a large discrepancy in the contract procedures between CP & L and the city’s other recipients of fire protection service, there is ample evidence to support the *11 judge’s findings. The Fire Chiefs lack of authorization from the municipal government, along with the procedural variance, is fatal to the existence of capacity to enter into a contract for fire protection services.
In the absence of capacity to contract, CP & L argues that the city ratified the agreement. At trial, CP & L proffered the city attorney’s testimony, which they contended was sufficient to show ratification. Generally ratification of a municipal contract must be “fully and clearly proved; and where there is a conflict of evidence on the issue of ratification, the sufficiency of proof is a question of fact,...” 63 C.J.S. Municipal Corporations, § 1009(b)(1) at 599 (1950).
The acts which CP & L point to as ratification are mostly acquiescence by the city. Ratification of a contract “cannot be implied from mere inaction, or from a mere failure to disaffirm the contract within a reasonable time,. . .” 63 C.J.S. Municipal Corporations, § 1009(b)(2) at 600 (1950). Because this was a question of fact, and there is evidence in the record to support the judge’s conclusion, it was not error for the court to conclude that a contract did not exist between CP & L and the City of Hartsville.
Unconstitutional Taking:
The final issue raised by CP & L is whether the inclusion of the Plant inside the fire district is an unconstitutional taking. The decision in Mills Mill v. Hawkins, 232 S.C. 515, 103 S.E. (2d) 14 (1957), is especially enlightening. In Mills Mill, we held that to justify an assessment of benefits to particular lands, it is not essential that the benefits be direct or immediate or that for every payment there must be an equal benefit. Id. CP & L asserts that the unconstitutional taking occurs because the inclusion confers no benefits on CP & L. CP & L would have us hold that the payment to the county is an assessment rather than a tax. The argument which CP & L makes is similar to the property taxpayer who does not have school-age children.
The dispositive question is answered by the evidence presented by the county showing the benefits accruing to CP & L from inclusion in the district. The testimony of Samuel Hobbs, as the expert for Darlington County, establishes both direct and indirect benefits to CP & L. Hobbs testified that the *12 placement of nuclear facilities in rural areas increases the demand on all county services. Hobbs noted that hazardous waste is transported in and around the county, CP & L maintains power lines throughout the area, and that the employees who live in the area receive the county’s fire protection.
Another benefit to CP & L is that the company can readily attract employees to an area which is capable of supporting the influx of people. The overall quality of life for employees is a basis for recruiting and maintaining a strong work force. Much discussion was made at oral argument about the applicability of the ISO insurance rating. It is at least noteworthy that if the ISO rating is reduced, then there is a direct benefit to the individual employee and an indirect benefit to CP & L.
CP & L has complained of the poor fire service provided by Pine Ridge, but since the creation of the district, the fire service has improved. Although initially it appears that a certain minor detriment may flow to CP & L, it is clear that the district is willing to train and purchase whatever equipment is required to provide the necessary support. The training which the district is required to accomplish is set out in the Hartsville Indoctrination Training Plan which, as of 1989, only requires two hours of instruction. Pine Ridge should have no trouble upgrading their training as well as their overall fire fighting proficiency.
The “assessment rather than a tax” argument fails because the benefits conferred on CP & L are not distinguishable from the general benefits enjoyed by the surrounding community. Casey v. Richland County Council, 282 S.C. 387, 320 S.E. (2d) 443 (1984). The fire study, and the text of the ordinance establishing the fire district, clearly show that a serious need existed to upgrade fire protection and coverage throughout the county.
There is ample evidence in the record to support the judge’s findings and conclusion that there was not a contract sufficient to exclude the Plant from the fire district. Likewise, we find no error in the trial judge’s conclusion that there was not an unconstitutional taking. Accordingly, for the reasons stated, the decision of the trial court is AFFIRMED.
Harwell, C.J., Finney and Moore, JJ., and C. Tolbert Goolsby, Jr., Acting Associate Justice, concur.

 CP & L’s H.B. Robinson Nuclear Power Plant is located more than five road miles from the Hartsville Fire Department; however, it is located less than five miles as the “crow flies” from the City of Hartsville.